889 So.2d 1128 (2004)
STATE of Louisiana
v.
Mark A. COLBERT.
No. 2004-KA-538.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*1129 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Paige J. Cline, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and CLARENCE E. McMANUS.
*1130 CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On April 4, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, Mark A. Colbert, with unauthorized use of a motor vehicle in violation of LSA-R.S. 14:68.4. Defendant was arraigned on April 7, 2003 and pled not guilty. On July 14, 2003, defendant waived his right to a jury trial, and the case was tried before the judge who found defendant guilty as charged.
On July 23, 2003, defendant filed a pro se motion for post-verdict judgment of acquittal and motion for new trial. Defense counsel filed another motion for new trial on August 6, 2003. Defendant's motions for new trial and motion for post-verdict judgment of acquittal were denied on August 13, 2003. On that same date, the trial court sentenced defendant to imprisonment at hard labor for ten years.[1]
The State filed a multiple bill alleging defendant to be a third felony offender on August 14, 2003. On August 20, 2003, defendant denied the allegations of the multiple bill. On August 14, 2003, defendant filed a motion for appeal that was granted.

FACTS
Samantha Matthews testified that, in October of 2002, defendant, who was her boyfriend at the time, was changing the oil and repairing the brakes on her vehicle. When she woke up, her vehicle was gone. Matthews called defendant's mother who told her that defendant had been there for a while, but that he was on his way back to Matthews. However, defendant never returned with her vehicle. Matthews testified that defendant called her two days later, and that she told him she wanted her vehicle back and had called the police. Defendant did not say anything. Matthews testified that she did not give defendant permission to take her vehicle for an extended period of time.
Matthews made a police report and filed an insurance claim in October, and the insurance company gave her $2,000 for her vehicle, which she was not satisfied with. In November of 2002, on the night of the Bayou Classic, Matthews was driving when she saw her vehicle somewhere in New Orleans. She called the police, but they said there was nothing she could do about it because the vehicle no longer belonged to her. Therefore, Matthews did not call the insurance company to advise them that she had seen the vehicle. Matthews also testified that her mother co-signed the loan for her to buy the vehicle, but that she (Matthews) paid all the notes on it.
Kenner Police Officer Keathma Connerly testified that Matthews advised him on October 16, 2002 that an acquaintance, defendant, was repairing her vehicle in front of her residence on October 12, 2002 at approximately 1:00 p.m. that day, and that when she returned to check on him at approximately 6:00 p.m., he and the vehicle were gone. Matthews told Officer Connerly that she waited several days to report the crime because she assumed that defendant had borrowed the vehicle to go to a friend's house. However, when defendant did not return, she decided to contact the police. Officer Connerly prepared a report and an arrest warrant for defendant.
At trial, the defense called Ann Barns as a witness. Barns, defendant's sister, testified that she spoke to Matthews approximately one week after Matthew's vehicle was allegedly stolen. Matthews asked Barns if she knew where defendant was, and Barns told her, "[n]o." Approximately three weeks later, Matthews called Barns *1131 and told her that she and her brother were riding around when she found her vehicle near a project. Barns testified that Matthews told her she had allowed defendant to use her vehicle, but that he had never returned with it.
Defendant testified that he was repairing Matthew's vehicle, but was unable to complete the brake work because he did not have the proper tools. He told Matthews he wanted to go back to the auto parts store, but Matthews said that her cousin who lived in the Calliope project repaired vehicles. Defendant testified that Matthews told him to bring the vehicle to the Calliope project.
At approximately 1:30 or 2:00 p.m., defendant took Matthews' vehicle to the Calliope project, left it on the side of a garbage can behind Rosenwald gym where Matthews had told him to leave it, and put the keys under the floor mat. He explained that, before he went to the Calliope project, he picked up his mother and sister and dropped them off at a bingo hall on Airline Highway.
Later on that day, defendant called Matthews and asked her "what was going on." Matthews asked him where her vehicle was. Defendant said, "[y]ou know where your car [is]." Matthews told defendant that she had called the police. Defendant then called his mother and asked her what was going on. Defendant's mother told him that Matthews had said he stole her vehicle or left in her vehicle and never returned with it. Defendant testified that he went back to the project, but the vehicle was gone.
Defendant admitted that he had prior convictions for a marijuana charge in 1986; a drug charge in 1987; attempted theft in 1987; possession of cocaine in 1992; and possession of stolen property in 1995.
Fanny Colbert, defendant's mother, testified that defendant took her and her daughter in Matthews' vehicle to the bingo hall on Airline Highway and dropped them off a little before 11:00 a.m. It was her impression that defendant was driving Matthews' car with Matthews' permission. Colbert testified that defendant told her he was going to put oil in the vehicle, and she assumed that defendant was going back to Matthews' after that.
Matthews, who was called as a rebuttal witness by the State, testified that she asked Barns shortly after the vehicle was taken where defendant was, and that Barns told her she did not know. Matthews further testified that, on the night of the Bayou Classic, she called Barns and told her she had seen the vehicle. Matthews stated that she and her mother were in the vehicle that night on the way back from visiting her brother in prison.
Matthews denied having any family members who lived in the Calliope project, and testified that neither her cousin nor her uncle ran a mechanic shop in or around Calliope. She also denied telling defendant to take her vehicle and park it there. Matthews explained that she would never have told anyone to park her vehicle there and leave the keys in the vehicle. She testified that she did not give permission to defendant to take her vehicle, and that a few days after he took it, she told him to bring it back.
Mary Wallace, Matthews' mother, who was called as a rebuttal witness by the State, testified that she was with Matthews when she (Wallace) saw the vehicle in New Orleans. Wallace further testified she saw the vehicle on a weekday, not a weekend, and that she had not gone to visit her son that day. She explained that Matthews did not give defendant permission to use her vehicle.
For the reasons which follow, we affirm defendant's conviction of unauthorized use of a motor vehicle, vacate defendant's sentence, *1132 and remand the matter for resentencing.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, the defendant argues that the trial court erred in failing to grant his motion for a new trial for two reasons. First, the defendant contends that the evidence was insufficient to support the conviction because the State failed to negate the reasonable hypothesis that he had permission to take the vehicle and Matthews' testimony was not credible because she contradicted her own testimony as well as the testimonies of Barns and Wallace. Second, he argues the trial court improperly used a pre-trial statement he made regarding his convictions in order to assess his credibility at trial.

Sufficiency of the Evidence
The State argues that this issue is not subject to appellate review under LSA-C.Cr.P. art. 851(1). Alternatively, the State argues that the evidence was sufficient to support the conviction, and that the inconsistencies cited by defendant are minor.
On July 23, 2003, defendant filed a pro se motion for post-verdict judgment of acquittal alleging that the State failed to prove a crime had been committed due to conflicting statements of time, identity, and jurisdiction. He also alleged that the State failed to prove any act of fraudulent conduct to deprive the alleged victim of the motor vehicle permanently.
On that same date, defendant filed a pro se motion for new trial under LSA-C.Cr.P. art. 851(1) adopting the same arguments used in the motion for post-verdict judgment of acquittal. Additionally, defendant argued that the alleged victim had given him permission to use the vehicle, the evidence was insufficient, and counsel was ineffective, in that he failed to introduce evidence, call witnesses, or provide defendant with information concerning his case.
On August 6, 2003, defendant's counsel filed a written motion for new trial alleging that the verdict was contrary to the law and evidence under LSA-C.Cr.P. art. 851(1) and that the trial court erred in using defendant's pre-trial statements to consider his credibility. The trial court denied the motions for new trial and motion for post-verdict judgment of acquittal without providing reasons.
The denial of a defendant's motion for new trial, based on LSA-C.Cr.P. art. 851(1), presents nothing for review on appeal. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50. However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under such circumstances. See, State v. Hampton, supra; State v. Lyles, supra; and State v. Pascual, 98-1052 (La.App. 5 Cir. 3/30/99), 735 So.2d 98. Thus, the sufficiency issue is properly before this Court.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560.
Defendant was convicted of unauthorized use of a motor vehicle in violation of LSA-R.S. 14:68.4(A), which provides in pertinent part:
Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, *1133 but without any intention to deprive the other of the motor vehicle permanently.
In the instant case, we find that a rational trier of fact could have concluded that defendant took Matthews' vehicle without her consent and a rational trier of fact could have reasonably found that defendant possessed the requisite criminal intent based on defendant's failure to respond when Matthews asked him to return the vehicle.
Matthews testified that she did not give defendant permission to take her vehicle for an extended period of time. She explained that defendant called her two days after taking her vehicle, and that she told him she wanted her vehicle back and had called the police, but defendant still did not return her vehicle. Wallace testified that Matthews did not give defendant permission to use her vehicle that day, that defendant did not have a set of keys to it, and that he was not allowed to take the vehicle anytime he wanted. Officer Connerly testified that Matthews reported to him that defendant took her vehicle, that she waited several days for him to return it, and that when he did not, she called the police. Although defendant claimed Matthews asked him to take the vehicle to the Calliope project so her family member could repair it, Matthews denied that contention, and the trial judge apparently rejected that contention as well.
Defendant contends that Matthews' testimony was not credible because Matthews contradicted her own testimony as well as that of Barns and Wallace. The record reflects that Matthews testified on direct examination that she saw her vehicle on Bayou Classic night (which she later explained was usually Thanksgiving weekend), stating, "I was driving, coming with my little brother, and I had seen it in New Orleans somewhere." However, on cross-examination, Matthews testified that she and her mother (Wallace) were coming from visiting her little brother who was in jail when she saw her vehicle. Wallace testified that she saw the vehicle on a weekday, not a weekend, and that she had not gone to visit her son that day. Barns testified that she did not know of any particular event going on the day that Matthews told her she saw the vehicle.
Defendant is correct in that there were contradictions within Matthews' testimony regarding who was riding in the vehicle with her when she saw her former vehicle. Defendant is also correct in that the testimony of Matthews and her mother differed on when they saw the vehicle and the circumstances surrounding it, and that the testimony of Matthews and Barns differed on whether Matthews saw the vehicle on the night of the Bayou Classic. Although there were a few contradictions, the trial court apparently concluded these were minor compared to Matthews' testimony regarding defendant taking her vehicle without her consent for an extended period of time and not returning it.
Based on the above, we find that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, that the defendant committed the crime of unauthorized use of a motor vehicle.

Improper Use of Defendant's Pre-trial Statement
On July 14, 2003, the day of the trial, the defendant was sworn in and waived his right to a jury trial. The State then made an opening statement, and defense counsel reserved his right to make one until after the State rested. Defense counsel put on the record that he had discussed a plea bargain with the defendant, but that the defendant had chosen to proceed to trial. He also advised the defendant that if he went to trial and lost, defendant could *1134 potentially serve twenty years to life imprisonment.
The defendant asked the court a question regarding how a multiple bill worked and whether he had to be Boykinized. After the court explained to the defendant the multiple bill process, defense counsel informed the court that the defendant maintained he had never been Boykinized, and that the State "had no priors in his file." The court asked the prosecutor how many convictions the defendant had. The prosecutor responded that he had six convictions. The court then asked the defendant to clarify his statement that he had never been Boykinized on any convictions. The defendant responded that he had only been convicted two times.
After the State presented its case, the defendant took the stand. During his testimony, the defendant admitted that he had prior convictions for a marijuana charge in 1986, a drug charge in 1987, attempted theft in 1987, possession of cocaine in 1992, and possession of stolen property in 1995. During his closing argument, defense counsel stated that it was generally not recommended that the defendant who had significant prior criminal records be put on the stand because juries automatically tune out whatever the defendant had to say. The trial court then stated that it would not tune out what the defendant said. The trial court noted that there was a credibility question with the defendant because he said he had two convictions while under oath and then admitted during his testimony that he had five. The trial court went on to say that the mere fact that the defendant had convictions would not be held against him.
The trial court found the defendant guilty as charged. Upon rendering the verdict, the trial court stated that there were some inconsistencies in the nervous victim's testimony, however, the defendant's story made no sense.
On appeal, the State argues that the defendant is not allowed to raise this issue because he did not object in the trial court. Alternatively, the State argues that the trial court was authorized by LSA-C.E. arts. 607 and 609.1 to consider the inconsistent statements relative to the defendant's credibility. Defense counsel did not object when the defendant told the trial court prior to trial, but after being placed under oath, that he had only been convicted twice. Defense counsel also did not object when the trial court told him during closing argument that the defendant had a credibility problem because of the inconsistent statements, nor did defense counsel argue that the use of inconsistent statements was improper.
According to LSA-C.Cr.P. art. 841, in order to preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. Therefore, we find that this issue is barred from review on appeal and we decline to address defendant's assignment of error on this issue.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant next argues that the ten-year maximum sentence imposed by the trial court is constitutionally excessive for the simple failure to return a vehicle that the victim was compensated for by her insurance company.
As discussed below in this Court's error patent review, there is a sentencing error patent which requires remand for resentencing. Therefore, this excessive sentence argument by the defendant is moot at this time and we will not address this issue in this appeal.

*1135 ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals two errors in this case.
First, the trial court sentenced the defendant immediately after denying his motions for new trial and motion for post-verdict judgment of acquittal. LSA C.Cr.P. art. 873 requires a twenty-four hour delay in sentencing after denial of a motion for new trial or in arrest of judgment, unless the defendant waives the delay. In this case, the defendant did not waive the delay.
When the defendant challenges the penalty imposed and the imposed sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated in LSA-C.Cr.P. art. 873 cannot be considered harmless error. State v. Augustine, 555 So.2d 1331 (La.1990); State v. Richardson, 00-134 (La.App. 5 Cir. 9/26/00), 770 So.2d 454, 458. As a general rule, when a defendant challenges a non-mandatory sentence, and the delay is not waived, the defendant's sentence must be vacated and the matter remanded for resentencing. State v. Sims, 02-1244 (La.App. 5 Cir. 4/29/03), 845 So.2d 1116, 1123, writ denied, 03-2189 (La.8/20/04), 882 So.2d 570. Because defendant challenges his non-mandatory sentence as excessive, we vacate the defendant's sentence and remand the matter for resentencing. Sims, supra; State v. Brown, 01-41 (La.App. 5 Cir. 5/30/01), 788 So.2d 694, 705.
Second, the record does not reflect that the defendant was advised of the two-year prescriptive period for filing an application for post-conviction relief, pursuant to LSA C.Cr.P. art. 930.8. As discussed above, the defendant's sentence has been vacated and this matter is remanded for resentencing. Therefore, this error is moot and must not be corrected.
In accordance with the above, we affirm defendant's conviction of unauthorized use of a motor vehicle, vacate defendant's sentence and remand this matter for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] Defendant did not waive sentencing delays. See error patent discussion.