902 So.2d 461 (2005)
STATE of Louisiana
v.
Dale YOUNG.
No. 04-KA-1318.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*463 John M. Crum, Jr., District Attorney, Fortieth Judicial District, Parish of St. John the Baptist, Rodney A. Brignac, Assistant District Attorney, Edgard, Louisiana, for Plaintiff/Appellee.
Katherine M. Franks, Louisiana Appellate Project, Slidell, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Dale Young, appeals his conviction and sentence for violations of LSA-R.S. 40:967(A), LSA-R.S. 40:967(A), and 40:981.3. For the following reasons, defendant's conviction is affirmed, the defendant's sentence is vacated, and we remand to the trial court for re-sentencing.
Defendant, Dale Young, was indicted by a grand jury on August 7, 2002 and charged with two counts of distribution of cocaine in violation of LSA-R.S. 40:967(A) and two counts of distribution of cocaine in a drug free zone in violation of LSA-R.S. 40:967(A) and 40:981.3. The indictment was amended on January 30, 2003 to charge Young with three counts of distribution of cocaine in a drug free zone occurring on May 14 and 15, 2002 and June 5, 2002, and one count of distribution of cocaine occurring on April 23, 2002. Young pled not guilty to the original indictment and filed several pre-trial motions, including a motion to determine competency. A sanity commission was appointed and the trial court ultimately found Young competent to stand trial.
On May 11, 2004, count one, distribution of cocaine in a drug free zone occurring on May 14, 2002, was severed and Young proceeded to trial on counts two, three, and four. Young was arraigned on the amended charges of counts two, three, and four and pled not guilty. After a two-day trial, the jury found Young guilty as charged on all three counts by a count of eleven to one. He was sentenced to twenty-five years on count two, twenty-five years on count three, and ten years on count four, distribution of cocaine. The sentences were ordered to run consecutively.
In the spring of 2002, Agent Mamie Pellegrin was working undercover for the St. John the Baptist Parish Sheriff's Office conducting drug buys throughout the parish. According to Sergeant Troy Hidalgo with the St. John the Baptist Parish Sheriff's Office, several confidential informants identified Young as being involved in trafficking crack cocaine in Laplace.
On April 23, 2002, Agent Pellegrin was working with a confidential informant who advised she had several people from whom they could purchase crack cocaine. Agent Pellegrin used a pay phone to call a pager number. She left her phone number with the number 100 behind it which indicated *464 she wanted $100 worth of crack cocaine. She received a call back from a male who told her to meet him on West 5th Street. Agent Pellegrin proceeded to the location where she met the man, whom she later identified as Young. Young, who was on a bicycle, insisted Agent Pellegrin exit her vehicle. Agent Pellegrin complied and then handed Young $100. Young spit five pieces of crack cocaine out of his mouth into Agent Pellegrin's hand. Agent Pellegrin returned to her vehicle and placed the pieces of crack cocaine in a bag which she later turned over to Sgt. Hidalgo. Sgt. Hidalgo conducted a field test of the pieces which was positive for cocaine. A subsequent lab test also confirmed the presence of cocaine.
On May 15, 2002, Agent Pellegrin repeated the process of paging Young and leaving her phone number followed by the number 100. Young returned her call and instructed her to meet him at a carwash on Elm St. Sgt. Hidalgo testified that this carwash was between 150 to 200 feet away from the St. Joan of Arc Catholic School. Agent Pellegrin proceeded to the carwash where she was met by Young, who arrived in a brown car which was later determined to belong to Young's girlfriend. Young made Agent Pellegrin exit her vehicle. Agent Pellegrin gave Young $100 and, in return, he gave her crack cocaine which was wrapped in a paper towel that he spit out of his mouth into her hand. Agent Pellegrin placed the cocaine in a bag once she got back into her vehicle. A field test on the matter was positive for cocaine and a subsequent lab result confirmed the presence of cocaine.
Agent Pellegrin conducted another drug transaction with Young on June 5, 2002. This time, Agent Pellegrin only requested $50 of crack cocaine when she paged Young. When Young returned Agent Pellegrin's page, he again instructed her to meet him at the carwash on Elm St. Agent Pellegrin gave Young the money and Young gave her crack cocaine. Again, a field test on the matter was positive for cocaine and a subsequent lab test confirmed the presence of cocaine.
All three of these transactions were recorded by audio and video surveillance mounted in Agent Pellegrin's vehicle. Additionally, Sgt. Hidalgo videotaped the June 5, 2002 transaction from another location.
In his first assignment of error, Young argues the evidence was insufficient to convict him of counts two and three, distribution of cocaine in a drug free zone.
Although Young admits the indictment is non-specific, he contends the State attempted but failed to prove the drug transactions occurred within 1,000 feet of a school, an essential element of LSA-R.S. 40:981.3(A)(1). He maintains Detective Hidalgo's estimation of the distance, without a survey, was insufficient to establish the element beyond a reasonable doubt. Young also asserts the State failed to prove the parking lot attached to the school was used for school purposes as opposed to church purposes. Alternatively, Young alleges the evidence was insufficient to prove the drug transactions occurred within 1,000 feet of a church or "religious building property" under LSA-R.S. 40:981.3(A)(3) because there were no signs marking the area as a drug free zone as required by statute.
In determining the sufficiency of the evidence, the reviewing court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of *465 the crime beyond a reasonable doubt.[1]
A reviewing court does not assess the credibility of witnesses or reweigh the evidence.[2] The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness.[3] The trier of fact is presumed to have acted rationally.[4] In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding.[5]
Young was convicted of distribution of cocaine within 1,000 feet of a drug free zone. As pointed out by Young in his appellant brief, although the indictment is non-specific as to which drug free zone the State attempted to prove under LSA-R.S. 40:981.3, the jury was charged with the applicability of LSA-R.S. 40:981.3(A)(1), which applies to school property. LSA-R.S. 40:981.3(A)(1) prohibits certain violations of the Uniform Controlled Dangerous Substances Law within 1,000 feet of school property as follows:
A. (1) Any person who violates a felony provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E.
....
C. For purposes of this Section:
(1) "School" means any public or private elementary, secondary, vocational-technical school, or any public or private college or university in Louisiana.
(2) "School property" means all property used for school purposes, including but not limited to school playgrounds, as well as any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility and all parks and recreational areas administered by the office of state parks.
Young does not challenge the sufficiency of the evidence with regard to the distribution of cocaine but rather only challenges the evidence establishing the distribution occurred in a drug free zone.
The State offered the testimony of Detective Hidalgo to establish that the drug transactions at issue occurred within 1,000 feet of a school. On direct examination, Detective Hidalgo testified as follows:
Q. where were you located at that time on June 5th?
A. In the parking lot in front of St. Joan of Arc Catholic School located on Fir Street.
Q. And the location that you were filming is located where?
A. On the east corner of Elm Street in LaPlace.
Q. And how far away is that from St. Joan of Arc School?
A. There was one property separating us which is 150 feet plus the servitude of the public highway at Fir *466 Street. I would say between 150 to 200 feet.
Q. From the school?
A. Yes, ma'am.
On cross-examination, defense counsel inquired further into the distance between the school and the drug transaction as follows:
Q. I want to go for a second to this business about how close the school was to this transaction.... Now, you gave an estimate as to how close thiswhich school was this that was adjacent to the
A. St. Joan of Arc Catholic School located on the corner of West 5th and Fir Street in LaPlace.
Q. That's St. Joanyou'll have to excuse me. St. Joan of Arc Catholic School?
A. Yes.
Q. Okay. And that is located close to, you say, to this carwash where the second two
A. This school, if you look at it, it's on the east side of the carwash. There's a street which is Fir Street. There's one lot which is approximately 150 feet and then the carwash is there on the east corner of the next street over which is Elm Street.
Q. Now, that's the thing. You estimated the difference as approximately. Has anyone gone forth and measured that distance formally? In other words, used an odometer or another fashionsome sort of measuring device and established that it's within a thousand feet of the sale?
A. It's well within a thousand feet. The average I gave you was well overthe lot is 150 feet plus the servitude of the road. That's the only thing separating the school from the carwash.
Young challenges the credibility of Detective Hidalgo's testimony regarding the distance between the drug transaction and the school. On appeal, Young attaches computer generated maps from MapQuest that give the approximate driving distance between Elm Street and Fir Street and asks this Court to take judicial notice of the distance.[6] These maps were never introduced at trial and the accuracy of these maps never established. Even if this Court were to take judicial notice of the driving distance, such a fact is inconsequential to the charged offense. The statute only requires the transaction occur within 1,000 feet of the school property. It does not mandate the 1,000 feet be measured by driving distance.
Detective Hidalgo testified there was one lot separating the school from the carwash and that the lot was approximately 150-200 feet across. The jury was free to accept or reject Detective Hidalgo's testimony regarding the disputed distance.
In State v. Johnson,[7] defendant argued the State failed to prove the distance from *467 the drug transaction to church property because the "pedestrian method" used to measure the distance from the transaction to the property was faulty. The police officer testified he measured the distance, 990 feet, by using a rolodex. Defendant alleged the rolodex had unknown accuracy and that it had been previously found to be unreliable by the courts. This Court noted that defendant did not avail himself of the opportunity to establish the accuracy of the measuring device or to attack the method of measurement produced by the rolodex at trial. This Court concluded that the jury was free to accept or reject the officer's testimony regarding the distance and that it apparently found the officer's testimony to be credible and believed the accuracy of his measurements. Stating that it was not the function of the appellate court to assess the credibility of witnesses or reweigh evidence, this Court found the State proved the drug violation occurred within 1,000 feet of a religious building property.
Also, in State v. Bartley,[8] this Court found the State had proved the drug transaction occurred within 1,000 feet of a school despite defendant's claim that the officer's testimony regarding the distance was not credible. The officer testified that she measured the distance between the property line of the school and the location of the transaction the week before trial and that it measured 143.5 feet. The officer's testimony was the sole evidence of the distance. This Court concluded that the jury obviously believed the officer's testimony regarding the distance at issue.
Likewise, in the present case, the jury apparently chose to believe Detective Hidalgo's testimony establishing the distance between the drug transaction and St. Joan of Arc Catholic School. The jury was aware Detective Hidalgo did not formally measure the distance but nonetheless chose to believe his estimation. His estimation that the transaction occurred between 150 to 200 feet from the school was uncontradicted.
Young also claims the State did not provide any evidence that the parking lot, from where Detective Hidalgo videotaped the transaction, was used for school purposes as opposed to church purposes. He relies on State v. Bedford,[9] to support his argument that the State needed to prove the school owned or maintained the parking lot in order for it to be considered school property.
Bedford is distinguishable because it involved a community center that was clearly not a school. The community center was allegedly "owned by the state or political subdivision and used or operated as a playground or recreational facility" thereby falling within the definition of school property set forth in LSA-R.S. 40:981.3(C)(2). The State attempted to establish the center as a school property through the testimony of the police officer who stated that center was run by the city and was a recreational area used as a playground for kids. The Supreme Court determined the State failed to prove ownership of the center by the state or political subdivision. The court reasoned the center could have simply been leased by the city but the statute required proof of ownership.
The present case involves a private catholic school, which falls within the very definition of school set forth in LSA-R.S. 40:981.3(C)(1). Detective Hidalgo testified he was parked in the parking lot in front *468 of the school and that the transaction occurred within 150 to 200 feet from the school. A juror could reasonably infer that the parking lot at issue is the school parking lot and, thus, used for school purposes. The fact the parking lot may also be used by the church does not negate its use for school purposes.
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the State proved the essential elements of the offenses charged by counts two and three beyond a reasonable doubt.
In his next assignment, Young argues the trial court erred in refusing to allow his attorney of choice, Willard Brown, from enrolling as co-counsel during trial. He maintains the enrollment of Mr. Brown would not have delayed or interfered with the trial proceedings and, thus, asserts the trial court abused its discretion in denying his request to enroll Mr. Brown. Young asserts he was denied his constitutional right to have counsel of his choice participate in his trial. He further contends the trial court's action was not harmless because his appointed counsel failed to present a viable defense.
In State v. Bridgewater,[10] the Louisiana Supreme Court summarized a defendant's right to counsel of choice by stating:
As a general proposition, a criminal defendant has the right to counsel of his choice.... [T]his right cannot be manipulated to obstruct orderly court procedure or to interfere with the fair administration of justice. `Defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings.' Absent a justifiable basis, `[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications.'.. . A trial court's ruling on this issue will not be disturbed in the absence of a clear showing of abuse of discretion.
(Internal citations omitted.)
The record reveals that Young was initially represented by a court-appointed attorney from the Indigent Defender Board (IDB). He was later represented by retained counsel, Martin Regan, and the IDB attorney was relieved of representation. The matter proceeded to trial at which time Young stated he wished to fire his retained counsel. As a result, the trial court declared a mistrial and again appointed an IDB attorney to represent Young.
Young proceeded to trial a second time with court-appointed counsel. On the second day of trial and after six of nine State witnesses had testified, defense counsel moved to enroll Willard Brown as co-counsel at the request of Young's family. The record shows Mr. Brown was present in the courtroom and appeared ready to assist in the trial. The State objected on the basis that voir dire was conducted on the jurors' knowledge of and relationship to the people involved in the case. The State argued Mr. Brown was not included as the subject of voir dire. The trial court agreed and denied Young's motion to enroll Mr. Brown as co-counsel. The trial court noted that it had asked the jurors whether they had a relationship with any attorney or a party and that Mr. Brown was not the subject of any of those discussions. The trial court explained that to *469 now ask the jurors about Mr. Brown would be extremely disruptive if a conflict existed. The trial court also noted that Mr. Brown made no appearances in any pre-trial matters. It further noted the late juncture of the trial commenting that six State witnesses had already testified.
We do not find that the trial court abused its discretion in refusing to allow Mr. Brown to enroll as co-counsel. In State v. Lawson,[11] the Louisiana Supreme Court found no error in the trial court's denial of a motion to recess trial to allow substitution of retained counsel where defendant waited until after commencement of trial to assert his right to be represented by counsel of choice. The Supreme Court noted that the case had been previously delayed because defendant could not meet his financial obligation to another retained counsel. The Supreme Court further noted that defendant had been adequately represented by appointed counsel in two pretrial matters.
In the present case, Young fired his first retained counsel during his first trial on December 8, 2003. The second trial did not commence until May 11, 2004. Young had five months within which to retain counsel of his choice. At no time prior to his second trial did Young make it known that he had retained other counsel. The record does not indicate when Mr. Brown was retained to represent Young. Although Young did not seek to fire his court-appointed attorney or to continue or recess his trial, enrolling co-counsel in the middle of a jury trial would have disrupted the entire trial and possibly resulted in a second mistrial. As the trial court pointed out, voir dire was based in part on the dynamics of the parties involved, including the attorneys. In order to grant Young's request, the trial court would have been required to recess the trial and poll the jurors about Mr. Brown.
As previously stated, a defendant must exercise his right to counsel of his choice "`at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings.'"[12] Young's expectation of having counsel of his choice on the second day of his second trial after the testimony of six of nine State witnesses was unreasonable. Furthermore, considering Young had fired his first retained counsel during his first trial, Young's attempt to add retained counsel in the middle of his second trial appears to be a manipulative tactic aimed at obstructing orderly court procedure. Thus, we find that the trial court did not abuse its discretion in denying Young's request.
In his third assignment, Young alleges the trial court erred in accepting the eleven to one non-unanimous verdict as a legal verdict sufficient to convict him of the three charges. Young claims the Louisiana Constitution, Article I, § 17, and Louisiana Code of Criminal Procedure article 782 are unconstitutional because they violate the Sixth Amendment of the United States Constitution. Young relies on the recent United States Supreme Court cases of Apprendi v. New Jersey,[13]Ring v. Arizona,[14] and Blakely v. Washington[15] to support his position that the Sixth Amendment requires a unanimous verdict to convict a defendant of a felony.
*470 Young raises this issue for the first time on appeal. Generally, issues not submitted to the trial court for decision will not be considered by the appellate court on appeal and "[c]onstitutional issues are no exception."[16] Accordingly, we decline to review this assignment of error.
In his fourth assignment, Young contends the trial court failed to observe the mandatory twenty-four-hour time delay between denying a motion for new trial and imposing sentence. He claims he did not waive the time delay and asserts the error is not harmless because he challenges the excessiveness of his sentence on appeal.
LSA-C.Cr.P. art. 873 requires a twenty-four hour delay in sentencing after denial of a motion for new trial or in arrest of judgment, unless the defendant waives the delay. When the defendant challenges the penalty imposed and the imposed sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated in LSA-C.Cr.P. art. 873 cannot be considered harmless error.[17] As a general rule, when a defendant challenges a non-mandatory sentence and the delay is not waived, the defendant's sentence must be vacated and the matter remanded for re-sentencing.[18]
Young was convicted on May 12, 2004. The record shows Young filed four motions for new trial, all prior to sentencing.[19] One was filed by counsel on May 13, 2004 and three were filed by Young pro se on June 1, 2004, June 3, 2004, and June 14, 2004.[20] Young was sentenced on June 14, 2004. The record shows the motion for new trial filed by counsel was denied on May 14, 2004 and the three pro se motions were denied on June 1, 2004, June 14, 2004, and June 16, 2004.
When the parties appeared at the sentencing hearing, defense counsel noted that he had received denials of his motions for new trial and post-verdict judgment of acquittal. He then pointed out that there was an outstanding pro se motion for new trial. The trial judge noted that it was not properly clocked in but stated he would hand it to his clerk so she could file it. The trial judge indicated he would consider the motion "in a moment." The trial judge proceeded to summarize Young's convictions and asked, "[a]nything for the record before we commence . . .," to which *471 defense counsel replied in the negative. The trial judge then sentenced Young on all three counts. After sentences were imposed, defense counsel objected on the basis of excessiveness. Thereafter, the State inquired into Young's pro se motion and the trial judge responded, "Yes. I'm sorry. That was denied. It was denied prior to sentencing."
The transcript does not reflect that the trial court's denial of the pro se motion for new trial was made known to the parties prior to sentencing. Thus, defense counsel's comment that he had nothing else to add immediately prior to sentencing cannot be construed as an implied waiver of the twenty-four-hour time delay required by LSA-C.Cr.P. art. 873.[21]
In State v. McDaniel,[22] the Louisiana Supreme Court remanded the case for resentencing when the trial court sentenced the defendant on the same day it denied his second motion for a new trial where the defendant did not waive the time delay. Similarly, in the instant case, the trial court likewise sentenced Young on the same day it denied his second or third motion for a new trial. Because Young challenges his non-mandatory sentences as excessive, we vacate his sentences and remand the matter for resentencing.
In his fifth assignment, Young asserts that the sentence imposed by the trial judge is excessive and was inadequately reasoned. Young argues the consecutive nature of his three sentences renders his total sixty-year sentence excessive. He contends the three drug transactions arose from a single course of conduct and, therefore, the sentences should be concurrent. He also contends the trial court's imposition of consecutive sentences violated his Sixth Amendment right to a jury trial under Apprendi v. New Jersey,[23] because the trial court made a factual finding that was not determined by the jury.
In light of our previous determination that Young's sentence should be vacated, we will pretermit discussion of this assignment as moot.
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux,[24] and State v. Weiland.[25] The following matter is noted:
Young received an illegally lenient sentence because the trial court failed to impose the mandatory fine. At the time of Young's offense, LSA-R.S. 40:981.3(E) provided that a defendant "shall be punished by the imposition of the maximum fine ... authorized by the applicable provisions of R.S. 40:966 through R.S. 40:970." The maximum fine for distributing cocaine is $50,000. LSA-R.S. 40:967(B)(4)(b).
This error is moot, however, because of a sentencing error discussed supra, that requires Young's sentences to be vacated and remanded.
Accordingly, for the foregoing reasons, defendant's conviction is affirmed, the defendant's sentence is vacated, and we remand to the trial court for re-sentencing.
AFFIRMED; SENTENCE VACATED; REMANDED.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[2] State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56.
[3] State v. Johnson, 03-903 (La.App. 5 Cir. 12/9/03), 864 So.2d 645, 650.
[4] State v. Mussall, 523 So.2d 1305 (La.1988).
[5] State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.
[6] Judicial notice is governed by LSA-C.E. art. 201. The jurisprudence shows that courts have taken judicial notice of geographical distances. In Breaux v. Crown Life Ins. Co., 250 So.2d 21, 23 (La.App. 1 Cir.1971), the First Circuit took judicial notice of a road map and the distance shown between two points. Also, in State v. Presley, 499 So.2d 465 (La.App. 2 Cir.1986), the Second Circuit took judicial notice of the approximate distance between a location within the parish and the parish line. However, in Williams v. Alfred, 99-743 (La.App. 3 Cir. 11/3/99), 748 So.2d 42, 45, the Third Circuit stated that "[R]esolution of disputed issues of material fact by judicial notice is improper."
[7] 03-903 (La.App. 5 Cir. 12/9/03), 864 So.2d 645.
[8] 03-1382 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006.
[9] 01-2298 (La.1/28/03), 838 So.2d 758.
[10] 00-1529 (La.1/15/02), 823 So.2d 877, 896, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003),
[11] 393 So.2d 1260 (La.1981).
[12] State v. Bridgewater, supra, at 896 (quoting State v. Seiss, 428 So.2d 444, 447 (La.1983)).
[13] 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[14] 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[15] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[16] State v. Williams, 02-1030 (La.10/15/02), 830 So.2d 984, 988. In Williams, the defendant challenged the constitutionality of LSA-C.E. art. 1104 on appeal but had not raised the issue in the trial court. The Louisiana Supreme Court pretermitted discussion of the defendant's claim noting that "[t]he constitutionality of the statute was clearly not the central focus of any hearing and the trial record [did] not contain any arguments on the topic." Id. at 988.
[17] State v. Colbert, 04-538 (La.App. 5 Cir. 11/30/04), 889 So.2d 1128, 1135.
[18] Id.
[19] LSA-C.Cr.P. art. 853 requires a motion for new trial to be filed and disposed of before sentencing.
[20] It is unclear whether defendant filed two or three pro se motions for new trial. The record shows defendant filed three pro se motions. However, two of the motions look like copies of each other and have the same file date of June 3, 2004 written in defendant's handwriting. During the sentencing hearing, the trial court referred to only one of the motions and noted the file date in defendant's handwriting was invalid. Thereafter, as reflected on one of the two motions, the motion was officially clocked in and filed during sentencing in open court. Although it appears defendant only filed two pro se motions for new trial, three motions are contained in the record and all three motions were denied by the trial court in writing. One of the three motions was denied two days after sentencing.
[21] See, State v. Green, 04-357 (La.App. 5 Cir. 11/16/04), 890 So.2d 6, 11-12.
[22] 340 So.2d 242, 247 (La.1976),
[23] 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),
[24] 312 So.2d 337 (La.1975)
[25] 556 So.2d 175 (La.App. 5 Cir.1990).