889 So.2d 1135 (2004)
STATE of Louisiana
v.
Calvin WILLIAMS.
No. 2004-KA-697.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*1137 Harry J. Morel, Jr., District Attorney, Howat Peters, Assistant District Attorney, Hahnville, LA, for Plaintiff/Appellee.
Jane L. Beebe, New Orleans, LA, for Defendant/Appellant.
Calvin Williams # 461243, in Proper Person, Angola, LA.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On August 30, 2001, the St. Charles Parish District Attorney filed a bill of information charging defendant, Calvin Williams, with armed robbery, a violation *1138 of LSA-R.S. 14:64. Defendant was arraigned the same day and entered a plea of not guilty.
Defendant filed various pre-trial motions, including motions to suppress the confession and identification, and a pro se motion to quash the bill of information. On September 18, 2002, the trial court heard and denied the motion to suppress the identification and the motion to quash. On December 12, 2002, the court heard and denied the motion to suppress the confession.
On January 13, 2003, the state amended the bill of information to remove the name of one of the three alleged victims, and to change the spelling of another victim's name. Defendant was arraigned as to the amended bill and entered a plea of not guilty.
Defendant was tried by a twelve-person jury on January 21 and 22, 2003. The jury returned a verdict of guilty as charged. On August 27, 2003, the trial court sentenced defendant to seventy years at hard labor, without benefit of parole, probation or suspension of sentence. The judge ordered that the sentence run consecutively to a sentence defendant was already serving for a Jefferson Parish conviction. The judge imposed an additional two-year term of imprisonment under LSA-C.Cr.P. art. 893.3, based on defendant's possession of a firearm at the time of the offense. The judge ordered that the two years be served consecutively to the seventy-year sentence. Defendant made an oral motion for appeal, and filed a written appeal motion on September 4, 2003. The judge granted an appeal on September 4, 2003.
On September 21, 2004, defendant filed, in proper person, a Motion for Leave of Court, to Withdraw Record, and For Extension of Time to File Pro Se Supplemental Appeal Brief. On September 23, 2004, this Court granted defendant thirty days within which to file a supplemental pro se brief. Defendant filed a pro se brief on October 12, 2004.

FACTS
On the morning of August 28, 2001, Tammy Capitano, Jennie Fasullo, and Christie Hebert were among the employees working at the Boutte branch of First National Bank. Diedre Wildmon was the only customer in the bank. Fasullo testified that the bank opened at 9:00. Soon thereafter, Fasullo was in the back of the bank using a coin counting machine, and defendant approached her from behind. Defendant grabbed her and said," `You f-in bitch, go get me some money.'" Fasullo testified that defendant had a gun, and she feared for her life. Wildmon testified that defendant pointed his gun at the tellers' heads.
Fasullo testified that she walked with defendant to her teller station. Capitano opened the money drawer, and she and Fasullo gave defendant the money in the drawer. Defendant directed Fasullo to put the money into a brown zippered bag. Fasullo did as defendant ordered. She also put dye packs into the bag, which were intended to mark the stolen money. Defendant continued to shout obscenities at the women. He demanded that the employees give him more money. Fasullo told him she did not have any more cash at her station. Defendant grabbed Fasullo again and forced her to move to the next teller window. Fasullo opened the drawer and gave him the money inside the drawer.
Defendant left the bank with the money and began running. Fasullo testified that she could not see him get into a vehicle. Following bank procedure, Fasullo locked the front door. She and the other women in the bank filled out witness forms describing the incident and the perpetrator.
*1139 Sergeant Billy LeBlanc of the St. Charles Parish Sheriff's Office testified that he received a dispatch regarding the bank robbery between 9:15 and 9:30 a.m. on August 28, 2001. He got into his patrol unit and headed for the bank. LeBlanc was stopped at a traffic light when he saw a car exit Interstate 310 and head downriver on Louisiana Highway 18 at a high rate of speed. The car fit the broadcast description of the car involved in the robbery. LeBlanc followed the car, a brown Chrysler Fifth Avenue, keeping it in sight.
LeBlanc testified that the Chrysler left the road, went into a grassy area, returned to the road, and crossed in front of traffic. The car then went onto the levee to bypass some slow-moving traffic. When it got back onto the road, it hit another car. It left the road again, and came to a stop after having rolled onto its side. Defendant was the car's driver and only occupant.
LeBlanc testified that there was money lying on the ground and inside the car. A gun was found inside the car. Detective Sergeant Rodney Madere, who was also involved in stopping defendant, testified that the money in defendant's car was covered in red dye. Officers arrested the defendant at the scene of the accident. Deputy Dave Guizzardi testified that he found a dye-stained bag of money on the ground on Breaux Street, near the bank.
Detective Donnie Smith headed the investigation at the robbery scene. He testified that he was at the bank for one and one-half to two hours interviewing witnesses. Det. Smith testified that he showed photographic lineups to Capitano, Fasullo and Wildmon on August 29, 2001. All three women identified defendant as the bank robber. Det. Smith further testified that teller Christy Hebert was shown a photographic lineup, and that she tentatively identified defendant as the perpetrator. Capitano, Fasullo and Wildmon positively identified defendant in court as the bank robber. Mike Guillot, First American Bank's security director, testified that most of the stolen money was recovered, and that the bank lost a total of $165.00.
Based on the following reasons, we affirm the defendant's conviction of armed robbery and affirm the defendant's sentence in part and vacate in part.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues the evidence at trial was insufficient to support his conviction of armed robbery because the state failed to prove identity. Under LSA-R.S. 14:64, "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." In addition to the statutory elements of the charged offense, the state is required to prove the identity of the perpetrator. State v. Bradley, 03-384, p. 6 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 85, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688. Where the key issue at trial is identity, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
Detective Sergeant Madere testified that he advised defendant of his Miranda[1] rights at the scene of the car accident, but that he did not question defendant. Defendant spontaneously told Det. Madere that he was not a robber; that he had been carjacked by the actual robber, who had then gotten out of the car at a Shell filling station. Defendant said he was attempting to return the money to the bank when the officers *1140 overtook him. Det. Madere asked defendant why he had been in the bank's parking lot in the first place, but defendant did not respond.
Defendant suggests that someone else committed the armed robbery at the bank, and that a great deal of the evidence at trial supports this proposition. Defendant argues that the state's evidence was wholly circumstantial, but that was not the case. Three eyewitnesses, Jennie Fasullo, Diedre Wildmon, and Tammy Capitano, positively identified defendant in a photographic lineup. The three women also identified defendant at trial. A fourth eyewitness, Christy Hebert, tentatively identified defendant in a photographic lineup. Wildmon testified she was able to get a good look at the perpetrator during the course of the robbery, as he did not seem to be aware of her presence. Fasullo was, during most of the incident, standing close to the perpetrator. She testified that she "was staring him down the whole time." When asked whether she had gotten a good look at the robber, she responded, "Sure did." Capitano testified that the perpetrator was right alongside her at one point, and that she was able to observe his facial characteristics.
Defendant points out that none of the witnesses mentioned the tattoo on his arm or his gold teeth as distinguishable traits in descriptions to police. He further stresses that Lieutenant Troxler said he did not see any dye on the defendant when he was apprehended, despite the fact that the dye pack placed into the bag by the tellers exploded at some point, and dye-stained money was scattered around the inside of his car. Defendant also notes that the witnesses gave somewhat varying descriptions of the perpetrator's clothing.
We find there were no major discrepancies in the witnesses' testimonies at trial. Wildmon testified that State's Exhibit 2, the white hat taken from defendant at the time of his arrest, looked familiar to her. She testified that State's Exhibit 1, a black T-shirt taken at the time of defendant's arrest, looked like the shirt the perpetrator wore. At the time of the robbery, Fasullo described the perpetrator's clothing as a black T-shirt, jeans, white tennis shoes, and a white hat. At trial, Fasullo testified that the white hat in evidence looked like the one the robber wore. She identified State's Exhibit 1 as the T-shirt the perpetrator wore. Capitano identified the hat as the one worn by the robber. But she said State's Exhibit 37, the jeans defendant wore at the time of his arrest, did not look like the perpetrator's pants. She thought the robber's pants were darker.
As to the absence of dye on the defendant, it is possible to infer that the dye pack exploded while the bag sat on the floor of defendant's car. As for the dye-stained bag of money found on Breaux Street, it is possible defendant dropped it while making his escape. Even if the dye pack exploded while defendant carried the bag, it is possible to infer that the bag contained all of the dye. Thus, there was nothing unusual about the absence of dye on defendant's hands and clothing.
On appeal, defendant also points out that the bank's security cameras did not photograph the robber. Mike Guillot, the bank's security director, explained that this was due to an antiquated security system. He testified that there were three rotating cameras inside the bank. The cameras' rotation patterns caused them to completely miss the robbery itself. The fact that the cameras failed to capture the robber's image does not, as defendant suggests, take away from the strength of the witnesses' identifications. Guillot testified that the robbery lasted less than five minutes.
*1141 Defendant further argues that police failed to identify any of the fingerprints recovered at the scene as his. This was also a factual matter to be considered by the jury. The jury was apparently not persuaded that the absence of fingerprint evidence was proof of defendant's innocence.
Defendant finally asserts that the sheriff's office failed to investigate his claim that he was carjacked by the "real" robber, and that the perpetrator was still at large. Det. Smith testified that when defendant claimed the real robber had gotten out of his car at a Shell filling station on Highway 90, Det. Smith dispatched officers to that location to investigate. Det. Smith testified that, although that part of the investigation was not documented in his police report, the police dispatcher would have a record of it. The jury apparently gave credence to Det. Smith's testimony.
After considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victims and their identifications of the defendant as the perpetrator. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Any conflicting testimony as to factual matters, the resolution of which depends on a determination of the credibility of the witnesses, goes to the weight of the evidence, and not its sufficiency. It is not the function of an appellate court to assess the credibility of the witnesses or re-weigh the evidence to overturn a jury's finding of guilt. State v. Cobb, 02-967, p. 5 (La.App. 5 Cir. 1/28/03), 839 So.2d 235, 237, writ denied, 03-0747 (La.10/17/03), 855 So.2d 758.
Considering the evidence in a light most favorable to the state, we find that a rational trier of fact could have found that the state proved identity beyond a reasonable doubt. Therefore, we find there was sufficient evidence to convict the defendant of armed robbery.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant next argues that the trial court erred in failing to suppress his verbal statement to Detective Sergeant Madere because the officer questioned him after he invoked his right to an attorney. Defendant further complains he was prejudiced by Det. Smith's testimony regarding a statement he made during the booking process.
At the December 12, 2002 suppression hearing, Det. Madere testified that he and Captain Fred Oubre assisted defendant in getting out of his car at the scene of the accident. Det. Madere testified that defendant said he thought his arm was broken. Det. Madere placed defendant under arrest on charges related to the high speed chase and the car accident. Det. Madere handcuffed defendant, placing his hands in front of him to avoid further injury to his arm. Det. Madere advised defendant of his Miranda rights, and the defendant indicated he understood those rights. Det. Madere testified that he did not question defendant, except to ask him his name. Det. Madere said that Det. Smith, who was the case officer, would have handled all questioning.
Det. Madere testified that, after he explained defendant's rights, defendant made spontaneous comments to him regarding the robbery. Defendant told the officer he was not the robber, but a victim and that the robber had carjacked him and exited the car at a Shell filling station. Defendant claimed he did not go inside the bank. Defendant said that at the time of the accident, he was heading back to the bank to return the stolen money the robber had left in his car.
*1142 Following his arrest, defendant was sent to Charity Hospital for treatment of his injuries. After defendant was transported by ambulance from the accident scene, Det. Smith met with Det. Madere on the scene. Det. Madere gave Det. Smith an explanation of events leading up to defendant's arrest. At the suppression hearing, Det. Smith testified that defendant was released from the hospital in the early morning hours of August 29, 2001, and was transported to the correctional center in St. Charles Parish. Det. Smith went to the correctional center to formally book defendant with robbery and to attempt to elicit a statement from him.
Det. Smith testified at the suppression hearing that he met with defendant in an interview room at the jail. He reviewed a printed rights form with defendant. Defendant indicated he understood his rights, and he initialed and signed the form. Defendant opted not to waive his rights and to make a statement. Det. Smith testified he only asked defendant questions related to the booking process, such as what his telephone number was. While Det. Smith was completing paperwork, defendant made some unsolicited comments, similar to those he made to Det. Madere at the accident scene. Det. Smith said defendant was in a partial body cast when he met with him at the jail. But defendant did not appear to be on medication when he spoke to him, nor did defendant indicate to him that he was in pain.
At trial, Det. Smith testified that he was asking defendant for personal information as part of the booking process, when defendant spontaneously claimed to have been a victim of the "real" robber. Defendant told Det. Smith that the robber had forced him to wait in the bank's parking lot while he went into the bank, and then forced defendant to help him escape. Defendant said the robber got out of his car at a Shell filling station.
Defendant testified at the suppression hearing that he was not advised of his rights until the morning after his arrest, when he met with Det. Smith. He said he did not remember Det. Madere speaking to him at the scene of the car accident. Defendant testified that a female officer asked him what had happened. When he responded that he had been carjacked by the bank robber, the female officer told him to be quiet until he had a lawyer.
Defendant testified that when he arrived at the correctional center, he was placed in a holding cell and fed. Det. Smith arrived shortly thereafter. Defendant said Det. Smith advised him of his rights, and he told the officer he did not want to talk without his lawyer present. According to defendant, Det. Smith responded, "`Well, you're going to be here three months. You're going to be here ninety days. You've been through this before.'" Defendant testified that he did not say anything further to Det. Smith.
At the conclusion of the suppression hearing, the judge stated:
Okay. I understand the seriousness of the accident and the fact that obviously the defendant would have been in some pain due to his injuries. However, that does not exclude the possibility that he was still able to understand and voluntarily waive his rights and understand what he was doing when he made his statement.
I find that the State has met their burden of proof in that regard. And additionally, I also find the statements made by the defendant were excited utterances by the defendant.
So, I will deny the Motion to Suppress.
Before a confession can be introduced into evidence, the state has the burden of affirmatively proving it was freely and voluntarily given, and was not made *1143 under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. State v. Enclade, 03-353, pp. 9-10 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 15-16. Custodial interrogation is
"questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way. Spontaneous and voluntary statements not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings, even if the defendant is in custody." State v. Castillo, 389 So.2d 1307, 1310 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Pardon, 97-248[,] [p. 15] (La.App. 5th Cir.10/15/97), 703 So.2d 50[,][62].
State v. Williams, 98-1006, p. 15 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 73-74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. Voluntariness of a statement is to be determined on a case-by-case basis. The trial judge's conclusions regarding the credibility and weight of the testimony relating to the voluntariness of a statement or confession will not be overturned unless they are not supported by the evidence. State v. Milton, 02-272, p. 9 (La.App. 5 Cir. 11/13/02), 833 So.2d 411, 417.
Defendant made the statements at issue after he was taken into custody and advised of his rights. Based on the evidence, we find defendant's statements to Det. Madere and Det. Smith were made voluntarily and spontaneously, and not in response to interrogation. Although defendant testified that his statement at the accident scene was a response to a general question from a female officer, the judge apparently found the officers' testimony more compelling. As a result, we find that the trial court did not err in denying defendant's suppression motion.

ASSIGNMENT OF ERROR NUMBER THREE
In his counseled brief, defendant argues his sentence is excessive because the trial court failed to sufficiently consider and articulate sentencing criteria set forth in LSA-C.Cr.P. art. 894.1. In his pro se brief, defendant argues that his sentence is excessive because he is a first-time offender.
Defendant concedes that he did not file a motion to reconsider sentence in the trial court below. Moreover, the record does not show that he made a specific objection at the time of sentencing. LSA-C.Cr.P. art. 881.1. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. State v. Dupre, 03-256, p. 7 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677 (citing State v. Dorthey, 623 So.2d 1276 (La.1993)). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
*1144 Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. State v. Tracy, 02-0227, p. 21 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213. The trial judge has wide discretion in imposing sentences within the statutory limits, and a sentence will not be set aside if it is supported by the record. State v. Taylor, 02-1063, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 894, 900, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516.
The trial court was provided with a pre-sentence investigation report prior to sentencing. The report shows that defendant has an extensive arrest record that includes offenses such as simple battery, unauthorized entry of an inhabited dwelling, distribution of cocaine, armed robbery, aggravated assault, and second degree murder. The report shows that defendant was convicted of simple battery in January, 2002, and received a suspended sentence. At the time of sentencing on the instant offense, there was a battery charge pending against defendant arising out of a fight he was involved in while being held at the Kenner City Jail. The recommendation of the Louisiana Department of Public Safety and Corrections was that defendant be sentenced to ninety-nine years at hard labor, the maximum term allowed by law.
In imposing sentence, the trial judge stated, in part:
I feel that you are in need of correctional treatment in a custodial environment that can provide most effectively by your commitment for that correctional treatment;
And any lesser sentence than I have given you would deprecate the seriousness of the crime that you have committed.
I'm also taking into consideration your conduct during the commission of this crime;
The activity that you actually engaged in;
The effect that it had upon your victims in this matter 
....
And that you should have known that the victim of this offense was particularly vulnerable or incapable of resisting, because I understand that actually one of the victims was pregnant at the time of the commission of the offense;
And that you knowingly created a risk of death or great bodily harm to more than one person during the commission of the offense;
That you used threats of violence during the commission of your offense;
And that subsequent to the offense, you used threats and other violence to influence the institution, conduct, or outcome of the criminal proceedings, that being the threats that you've made to various individuals throughout these proceedings and also your physical attack on your attorney prior to the trial of this matter.
....
And also that you used a dangerous weapon in the commission of this offense.
And for those reasons  and I find that there are no mitigating factors.
The only reason that I'm giving you 70 years rather than the recommended 99 is because of your age of only 22 years.
Considering defendant's extensive record of violent criminal activity, and the nature of the instant offense, the seventy-year sentence does not appear to be constitutionally *1145 excessive. Compare, State v. Jackson, 04-293 (La.App. 5 Cir. 7/27/04), 880 So.2d 69. In State v. Jackson, this Court found that a ninety-nine-year sentence for armed robbery was not excessive where the defendant went into the victim's place of business, pointed a gun at him, tied him up, and threatened to kill him. This Court also noted that, although the defendant was sentenced as a first-time offender, he had at least one prior felony conviction. The state had filed, and later withdrawn, a habitual offender bill alleging defendant had a prior conviction for distribution of cocaine.
Given the trial judge's comments in this case, it is apparent that defendant's sentence would have been greater if the judge had not made allowances for his youth. Defendant fails to show that the trial judge abused his broad sentencing discretion. Therefore, we affirm defendant's sentence of seventy years at hard labor.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note two errors for review.
First, the trial court did not advise defendant of the two-year prescriptive period for filing an application for post-conviction relief, as per LSA-C.Cr.P. art. 930.8. Therefore, we order the trial court to provide defendant with written notice of the two-year prescriptive period, and to file written proof of said notice in the record. See, State v. Stelly, 98-578, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
Second, the trial court illegally imposed a separate two-year sentence upon finding that defendant possessed a firearm at the time of the offense. The trial court cited as authority the provisions of LSA-C.Cr.P. art. 893.3. Subpart A of that article provides:
If the court finds by clear and convincing evidence that the offender actually possessed a firearm during the commission of the felony or specifically enumerated misdemeanor for which he was convicted, the court shall impose a term of imprisonment of two years; however, if the maximum sentence for the underlying offense is less than five years, the court shall impose the maximum sentence.
First, the article merely provides for a mandatory minimum sentence for the offense for which the defendant has been convicted, not an additional sentence on top of the one already imposed for the substantive offense. See, State v. Lee, 02-1793, pp. 22, 49 (La.App. 4 Cir. 4/2/03), 844 So.2d 970, 985, 1000, writ denied, 03-1247 (La.10/10/03), 855 So.2d 330. Secondly, the state failed to comply with the procedural requirements for invoking the provisions of Article 893.3. LSA-C.Cr.P. art. 893.1 provides that, if the district attorney intends to move for imposition of a sentence under Article 893.3, he must file a motion within a reasonable period prior to commencement of the trial of the felony in which the firearm was used. The trial court may, at its discretion, hold a contradictory hearing on the district attorney's motion following conviction. The court may consider evidence adduced at the hearing as well as trial in determining whether the state has met its burden. While the state sufficiently proved at trial that defendant committed the armed robbery with a firearm, the record does not show that the state filed the required pre-trial motion to invoke the firearm sentencing provision.
Neither the state nor the defendant raises this error on appeal. This Court may, however, notice it as a patent error. State *1146 v. Lee, 02-1793 at p. 22, 844 So.2d at 985. Therefore, we vacate the two-year sentence imposed by the trial court for defendant's possession of a firearm.
In accordance with the above, we affirm defendant's conviction of armed robbery and defendant's sentence of seventy years at hard labor. In addition, we vacate defendant's two year sentence for possession of a firearm.
CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND VACATED IN PART.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).