968 So.2d 187 (2007)
STATE of Louisiana
v.
Bryan HARRIS.
No. 07-KA-124.
Court of Appeal of Louisiana, Fifth Circuit.
September 25, 2007.
*189 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Shannon Swaim, Assistant District Attorneys, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Holli A. Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
*190 FREDERICKA HOMBERG WICKER, Judge.
Defendant, Bryan Harris, appeals his conviction and sentence on a charge of looting after Hurricane Katrina in violation of 14:62.5(C). Finding no merit in the defendant's assignments at to sufficiency of evidence or jury charges, we affirm the defendant's conviction. However, we note that the sentence is a serious concern in this appeal, and it is our decision that the sentence must be vacated and remanded for reconsideration by the trial court.
Bryan Harris and co-defendant, Phillip Brumfield[1], were charged by bill of information with looting after a declared state of emergency. At the arraignment, the defendant entered a plea of not guilty. He was tried and found guilty as charged. The defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial. Both motions were denied by the trial court and the defendant was sentenced to serve five years at hard labor without benefit of parole, probation, or suspension of sentence. A timely filed motion for appeal was granted, bringing the matter before this court for review.
FACTS
On August 29, 2005 Hurricane Katrina struck, putting the entire New Orleans area in dire straits. On that day Detectives Brian Rico, Bill Johnson and Wayne Williams of the Gretna Police Department were on patrol in an unmarked truck. Their twofold mission was to assist citizens in need and to deter criminal activity. During that patrol at about 5:00 p.m., the detectives observed two men and one women taking merchandise out of the Gretna Supermarket at 1201 Burmaster Street. From the vehicle, the detectives watched as the three individuals exited the business and walked west on the sidewalk. At this point the detectives got out of their truck and detained the suspects.
Detective Johnson stayed with those suspects while Detectives Williams and Rico walked back towards the supermarket. As they approached the store, the detectives saw three other individuals taking property out of the store. Detective Rico explained that he saw one of the subjects inside the supermarket handing property to the other two individuals who were placing the property into a large trash can on wheels. Detective Rico went back to where Detective Johnson had the original three suspects. When these three individuals were handcuffed and secured, Detective Rico and Detective Williams returned to the supermarket to attempt to apprehend the second set of looters.
The detectives drove up to the front of the supermarket, parked and observed three suspects pushing and pulling the trash can containing the stolen property toward the Fischer Housing Development. When the three suspects saw the detectives the suspects began to run, with Detective Rico in pursuit. Two of the suspects (Bryan Harris and Phillip Brumfield) slipped and fell. Detective Rico ordered them to stay on the ground and called for backup. The detective explained that backup was necessary for safety purposes because there were shots being fired at police officers from the Fischer Housing Project. When the backup arrived, Detective Rico handcuffed Harris and Brumfield and advised them of their rights pursuant to Miranda v. Arizona.[2]
*191 Detective Williams chased, and ultimately captured, the third suspect who had jumped into a canal to evade arrest. All three were arrested. Examination of the trash can revealed 22 bags of hair extensions, 31 cans of Mad Dog 20/20 alcohol, 34 cans of Budweiser beer, and 14 cartons of King Kool cigarettes. The stolen items were photographed and returned to the supermarket. However, the photographs could not be located for trial.
At the trial on the merits, in addition to the testimony of the detectives, the court heard the testimony of Maher Askar, son of the owner of the Gretna Supermarket. Mr. Askar testified that the business was closed that day due to Hurricane Katrina, and that the defendant did not have permission to be in the store.
The defendant, Bryan Harris, testified in his own defense at trial. His recollection of the events is different from that of the detectives. The defendant stated that his parents went to a hotel to evacuate prior to Hurricane Katrina. However, he stayed behind with a friend in a two-story apartment off Terry Parkway to ride out the storm. When the roof collapsed on the apartment building, the defendant decided to try to get to his aunt's apartment in the Fischer Housing Development. On the way he passed the Gretna Supermarket and noticed a "guy" coming out of the supermarket parking lot. The man was walking about ten feet in front of him and was pushing a basket or wheelbarrow. The defendant testified that he did not recognize the individual because the man's back was facing the defendant, although later he recognized the man as his cousin D.H.[3] The defendant also admitted seeing Brumfield, although he denied seeing police officers or the first set of looters. The defendant stated that Brumfield was across the street talking on a cell phone.
The defendant further testified that a vehicle pulled up in front of him. When police officers got out of the vehicle with guns drawn, D.H. jumped into the canal. The police officers pointed their guns at the defendant and ordered him to get down on the ground. In response, the defendant went into the middle of the street and dropped to his knees. The officers also arrested Brumfield. When one of the officers returned with the suspect who jumped into the canal, the defendant recognized him as his cousin, D.H.
All three were arrested and taken to police headquarters where the defendant, who was originally with Brumfield, was moved into the room with the first set of looters. At the end of his testimony, the defendant denied giving a statement to the police and maintained his innocence.
The co-defendant, Phillip Brumfield, also testified at trial. According to his testimony, he was unable to reach his family by telephone after the hurricane. Because he had no vehicle, he decided to walk to his sister's home at Elizardi and Lawrence. He explained that he was trying to get to his young daughter, who was staying with his sister. His path took him past the Gretna Supermarket. Although a shorter route exists, Brumfield explained he chose the route he took in an effort to avoid the looting at the Oakwood Mall.
Brumfield stated that, as he walked up Burmaster on the opposite side from the supermarket, he saw a man pushing a cart near the supermarket. He also saw two men and a woman sitting on the curb about a block from the supermarket, and a police car parked next to them. At that *192 point a truck passed him up, made a turn and parked. A man, whom Brumfield later discovered was a police officer, got out of the truck. The man pushing the cart ran towards a canal. Another man got out of the truck, pointed a gun at Harris and told him to "freeze." Brumfield stated that he did not know the defendant at the time, but observed him walking about ten feet behind the man pushing the cart. The defendant got down on the ground. One of the police officers pointed a gun at Brumfield and told him to "freeze." Brumfield complied.
After D.H. was apprehended, all three were arrested and taken to the detective bureau. Brumfield testified that he and D.H. were in one room and that the defendant was in another room with the original three suspects. Brumfield testified that his impression from what D.H. said was that the defendant was not involved in the looting.
ASSIGNMENTS OF ERROR
In brief to this court, the defendant argues the evidence presented at trial is insufficient to support the conviction. Specifically, the defendant argues the State failed to prove that he knew or should have known that a state of emergency had been declared, or that he intentionally entered the supermarket. The defendant further argues that the jury should not have found him guilty, when his co-defendant was found not guilty on the same evidence. Finally, the defendant argues that no physical evidence was presented, and that the State failed to negate any reasonable probability of misidentification.
In his second assignment of error, the defendant asserts that his sentence is excessive. In a supplemental assignment of error the defendant argues that the trial court erred in failing to sustain a defense objection to the jury instructions.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). In accordance with that directive, we will consider the sufficiency question first.
SUFFICIENCY OF EVIDENCE
The defendant's assignment relating to sufficiency incorporates several arguments. Initially, the defendant argues that the State failed to prove the elements of the crime charged. The defendant maintains the State failed to prove the essential element of intentional entry into the supermarket. The substantive argument made regarding that element is one of identity. The defendant argues that tensions were high, several looters were caught in the area and shots were being fired at police. The defendant suggests that, in such a confused state, officers could have easily arrested individuals in the area who were not involved in the looting.
The defendant also asserts the State failed to prove that the defendant knew or should have known of the state of emergency. The defendant admits the State made an adequate showing that a state of emergency had been declared, and that the officers knew of that declaration. However, the defendant argues the State failed to show that the defendant knew or should have known of the emergency declaration. The defendant maintains that he was eighteen-years-old at the time, and that his young age, lack of experience with disasters of this magnitude, and level of education, precludes his knowledge of the declaration of a state of emergency.
*193 The defendant further argues that Detective Rico's statements cannot be relied upon because of the officer's decision to "cut a lot of corners." Specifically, the defendant notes that the statement was not recorded, forms usually completed to show that an arrestee was properly advised, understood and waived certain rights were not filled out. The basic premise in this argument is that a conviction cannot stand based on "sloppy" police procedures used in the confusion after Hurricane Katrina.
The defendant also asserts that the lack of physical evidence presented by the State in the prosecution of the defendant makes the evidence presented insufficient to support the conviction. The defendant reminds this court that the State did not introduce photographs of the alleged merchandise taken by this defendant, nor did the state present any fingerprint evidence from the garbage can, shutters, or entry-way used by the looters.
Further, the defendant maintains that the jury could not have reasonably found him guilty, when the same evidence was not deemed sufficient to convict his co-defendant.
LAW AND ANALYSIS
The defendant was convicted of looting during a declared state of emergency in violation of La. R.S. 14:62.5 C. At the time of this offense that statute provided that it is a crime to loot "during the existence of a state of emergency, which has been declared pursuant to law by the governor. . . ., when the defendant knew or should have known that a declaration of emergency existed. . . . "[4]
La. R.S. 14:62.5 A defines looting as:
..... the intentional entry by a person without authorization into any dwelling or other structure belonging to another and used in whole or in part as. . . . a place of business,. . . . in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind, . . . and the obtaining or exerting control over or damaging or removing property of the owner.
In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the defendant's identity as the perpetrator. State v. Draughn, XXXX-XXXX (La.1/17/07), 950 So.2d 583, 593. As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Id., citing, State v. Neal, XXXX-XXXX (La.6/29/01), 796 So.2d 649, 658, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Positive identification by one witness is sufficient to support a conviction. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
Therefore, in order to convict a defendant of looting during a declared emergency, the state must prove that defendant (1) intentionally entered a structure containing a business, (2) that lacked normal security because of a hurricane, flood, act of God, or force majeure of any kind, (3) during a declared state of emergency that the defendant knew or should have known existed, and (4) that defendant obtained, exerted control over, damaged or removed property of the owner. Additionally, the State must prove the identity of the defendant as the perpetrator.
*194 Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. "Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts." State v. Williams, 05-59 (La. App. 5 Cir. 5/31/05), 904 So.2d 830, 833. The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
The well-established standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
An appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. State v. Williams, supra. The reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Barnes, 98-932 (La.App. 5 Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
We believe that the testimony presented is sufficient to prove the element of the crime of looting in so far as the defendant knew or should have known a state of emergency existed. The defendant stated that he was well aware of the approaching hurricane, and that his parents evacuated prior to the landfall of the storm. Further, he testified that he knew an emergency existed when the roof collapsed on the home in which he was staying, there was no electricity and debris covered the area.
We also find that the testimony of police officers, despite the lack of physical evidence offered by the State, is sufficient to show that there was no reasonable probability of misidentification and that it was the defendant who intentionally entered the Gretna Supermarket to loot.
Detective Williams testified that he saw two males "climbing out of the open shutters," and that he saw "a younger black male come out" and start "handing property to the other two that were outside." He stated that he saw "two individuals climb out of the open window and a third remained inside and handed things out." Detective Williams was "absolutely positive" that the three individuals he saw looting were the same three who ran and were subsequently apprehended and identified as Harris, Brumfield, and D.H.
Detective Rico also identified the defendant as one of the looters in the Gretna Supermarket. It was Detective Rico who apprehended the defendant.
Although the defendant and co-defendant testified that they were merely in the area and did not participate in the looting, it is clear that the jury reviewed the testimony of all witnesses and found that of the police officers to be more credible. It is well settled that the credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Baker, 01-1397 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365.
*195 We are not persuaded by the defendant's argument that the evidence is insufficient because normal police procedures were not followed in the confusion of Hurricane Katrina's aftermath. The defendant argues that no written statement was recorded after the arrest. The State does not take issue with that argument. However, there is conflicting testimony among the police officers and the defendants regarding whether an oral statement was given by the defendant to police. This also is a judgment on the credibility of witnesses made by the jury in the face of conflicting testimony.
Detective Rico explained at trial that the shortage of manpower, due to the overwhelming number of looters and amount of property destruction occurring at the time, caused the officers to dispense with the paper work and get out on the streets as soon as possible to attempt to restore order to the community. In addition, there were shots being fired at police from the Fischer Housing Development as these officers attempted to do their jobs. It is obvious that the jurors found Detective Rico's explanation for his failure to complete waiver of rights forms and tape record the statements was reasonable under the unprecedented circumstances that followed Hurricane Katrina. It is clear that the jury did not find the actions of the police officers in apprehending looters to be faulty police work which constituted an impingement on the fundamental due process of law. See; State v. Baker, supra.
Further, we find the same logic and analysis should be applied to the defendant's argument regarding the lack of physical evidence. Detective Rico testified that he removed the merchandise from the garbage can used to transport the items stolen. He counted them, and recorded the items and amounts on a note pad he carried with him. Those notes were offered into evidence and are contained in the record. He also photographed the items, although in preparation for trial, only the photos from the first arrest could be located. He also explained that the vast amounts of merchandise collected that day from looters, and lack of manpower, prevented the items from being taken to police headquarters and processed.
The testimony of police officers faced with snipers, citizens in dire need, and numerous looters, is clear, consistent and positive regarding the identity of the looters, and the exact items looted. We find that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Such evidence can support the conviction even in the absence of physical evidence.
In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the court, is sufficient to support a conviction. State v. Cowart, 01-1178 (La.App. 5 Cir. 3/26/02), 815 So.2d 275, 284; writ denied, 02-1457 (La.5/9/03), 843 So.2d 387, (citing; State v. Mussall, 523 So.2d 1305, 1311 (La.1988)). In the matter before us, we find the positive identification of two police officers and the testimony that they witnessed the defendant looting, and subsequently took photographs of the merchandise is sufficient to support a conviction even with the lack of physical evidence to link the defendant to the crime. Id.
The defendant also argues that the failure to produce a written waiver of rights form to show that he was informed of his rights constitutes error. There was testimony by police officers at trial that they informed the defendant of his rights under Miranda v. Arizona, supra at the time of the arrest and later at police headquarters. However, the officers admit that a waiver of rights form was not signed. It is also *196 clear from police testimony that the defendant was interviewed and they contend that the defendant admitted the criminal activity with which he was charged.
The defendant does not make the claim that he was not advised of his rights, or was coerced or harassed by police officers into waiving his rights and giving a statement, he merely argues that he did not make a statement. Thus, the issue is not whether the defendant's statement was taken unconstitutionally, but whether a statement was actually made by the defendant while in police custody.
Whether or not a statement was given to police officers is a question of fact to be decided by the jury on credibility assessments. State v. Baker, supra. In this matter the jury clearly assessed the police officers' testimony as more credible than that of the defendant.
Consequently, we find no merit in the defendant's assertion that the evidence presented by the State was insufficient to support a conviction of looting during a state of emergency.
EXCESSIVE SENTENCE
We will consider the defendant's argument on excessive sentence first because, although we believe it has merit, we must vacate the sentence for other reasons.
The statute under which this defendant was convicted, La. R.S. 14:62.5 C, provides that a defendant:
..... may be fined not less than five thousand dollars nor more than ten thousand dollars and shall be imprisoned at hard labor for not less than three years nor more than fifteen years without benefit of probation, parole, or suspension of sentence.
The defendant herein received a five-year term. In his argument in support of this assignment of error, the defendant points out to this court that he is a first time offender convicted of a non-violent crime. The defendant was also a high school student at the time of Hurricane Katrina and attended career classes after school while maintaining a part time job. The defendant asserts the five year sentence without benefits is disproportionate to the crime. While we are inclined to agree with the defendant's assessment that the sentence as it relates to this defendant is excessive, we are not able to reach the merits of the issue.
We note that the defendant was not afforded the twenty-four-hour delay before sentencing as required by La. C.Cr.P. art. 873. The record shows that immediately after the denial of defense motions for new trial and for post-verdict judgment of acquittal, the trial judge stated, "Now, we come to the sentencing. Your client is before the Bar?" The defense counsel responded, "He is, Your Honor." At that point the defense counsel presented mitigating circumstances to the trial judge. The defense counsel informed the court that he wanted to submit letters from a teacher and from the career center at the defendant's high school to attest to the defendant's character. Although the trial judge told the defense counsel to file the letters with the clerk, the judge immediately sentenced the defendant to the five year term.
La.C.Cr.P. art. 873 provides in pertinent part as follows:
.............If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
When the defendant challenges the penalty imposed and the imposed *197 sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated in La.C.Cr.P. art. 873 cannot be considered harmless error. State v. Colbert, 04-538 (La.App. 5 Cir. 11/30/04), 889 So.2d 1128, 1135. When, as in the matter before us, a defendant challenges a non-mandatory sentence, and there is no express waiver of the twenty-four hour delay for sentencing, the sentence must be vacated and the matter remanded for re-sentencing. Id. Accordingly, we vacate defendant's sentence and remand the matter for re-sentencing in accordance with law and jurisprudence.
The letters to which the defense counsel referred are not in the record and it does not appear they were filed into evidence. We assume, therefore, that these letters were not considered by the trial judge in sentencing. We believe it is possible that the trial court is unaware of the defendant's lack of prior criminal activity, his high school attendance, and his non-violent actions in the matter herein.
In re-sentencing this defendant we encourage the trial court to consider the mitigating circumstances and the letters written on the defendant's behalf, and consider a more appropriate sentence for this defendant.
JURY INSTRUCTIONS
In a supplemental assignment of error, the defendant argues the trial court erred in failing to sustain a defense objection to the jury instructions regarding reasonable doubt.
The defendant argues the jury was charged with constitutionally impermissible instructions regarding the issue of reasonable doubt. In support of his argument, the defendant cites La.C.Cr.P. art. 804 A(2), and asserts that the requirements of that article were not met, causing the jury to be instructed to place a greater burden to finding reasonable doubt than that which state and federal law allows.
La.C.Cr.P. art. 804 provides:
In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The actual jury charge given in the matter before us is:
A person accused of a crime is presumed by law to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. This doubt must be a reasonable one, that is one found upon a real, tangible, substantial basis and not upon mere caprice, fancy or conjecture. Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. It is the duty of this jury if not convinced of the guilt of the defendant beyond a reasonable doubt to find him not guilty.......
.....You are prohibited by law and your oath from going beyond the evidence to seek for doubt upon which to acquit the defendant. But, you must confine yourselves strictly to a dispassionate *198 consideration of the testimony given upon this trial.
You must not resort to extraneous facts or circumstances in reaching your verdict. That is, you must not go beyond the evidence to find facts or circumstances creating doubt. But, you must restrict yourselves to the evidence that you heard in the trial on this case or the lack of evidence.
A review of the record shows that there were two conferences among the attorneys and the trial judge held off the record at which proper jury instructions were discussed. After the first, the trial judge went on the record to state that some objections to the general jury charges were made by the defense counsel. Specifically, the defense objected to charging the jury "not to go beyond evidence to seek doubt." The defense counsel argued that charge was unnecessary since the jury would already be instructed as to their duty to deliberate, to follow the law and to weigh the evidence. He also argued such an instruction discourages a jury to look for doubt.
The defense counsel further objected to the instruction that, "a person accused of a crime is presumed by law to be innocent until each element of the crime is proven beyond a reasonable doubt." The defense counsel argued the word "until" should be replaced with "unless." The trial court noted the defense counsel's objections.
After the State and the defense rested, the second jury charge conference was held. At the close of that conference, the trial judge made some changes in the jury charges, but not those requested by the defense regarding reasonable doubt.[5]
In brief to this court, the defendant argues that the instructions given to the jury on reasonable doubt fail to conform to La.C.Cr.P. art. 804 in that it fails to instruct the jurors that they must give the defendant the benefit of every reasonable doubt. The defendant asserts that the instruction concentrates too much on giving the jurors a "stringent" definition of what constitutes a "reasonable" doubt. The defendant argues that the end result of the instruction, when taken as a whole, is to impose a more onerous burden on finding reasonable doubt than is required by law.
The first sentence is a verbatim repeat of the La.C.Cr.P. art. 804(1). Thus the court properly refused to use the word "until" rather than the word "unless" as requested by the defendant. Further, under La.C.Cr.P. art. 804 a trial court may define "reasonable doubt" in its instructions to the jury.
A jury charge is not incorrect when taken as a whole, it is such that a reasonable person of ordinary intelligence would have no problem in understanding the definition of reasonable doubt. State v. Taylor, 410 So.2d 224 (La.1982); State v. Grant, 517 So.2d 1151 (La.App. 5 Cir. 1987). This court has recently set forth the law on this issue in State v. Martin, 04-924 (La.App. 5 Cir. 1/25/05), 895 So.2d 55. In so doing we noted the pronouncement of the United States Supreme Court in the consideration of an improper jury instruction in Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). The Victor court utilized the reasonable likelihood standard of review, stating that: When considering an allegedly improper jury instruction, a reviewing court must determine whether it is "reasonably likely" *199 that the jury applied the challenged instruction in an unconstitutional manner, not whether it is possible that the jury misapplied the instruction. Id.
In determining whether it is reasonably likely that the jurors misapplied the instruction, the challenged terms are considered in relation to the instructions as a whole. The test is whether, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. A conviction will not be reversed on grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. (Citations omitted) State v. Martin, supra, 895 So.2d at 60
Using the above standard, we do not find error in the jury charge relating to reasonable doubt. Consequently, we find this assignment to be without merit.
For the foregoing reasons, the defendant's conviction is affirmed, the defendant's sentence is vacated and the matter is remanded to the trial court for re-sentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; MATTER REMANDED.
NOTES
[1] Phillip Brumfield was also charged with looting after a declared state of emergency and tried with the defendant herein. The jury was deadlocked at to Brumfield and a mistrial was declared. Therefore, this appeal only relates to Harris.
[2] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)
[3] This suspect's initials are used because he is a juvenile. D.H. was the third suspect arrested with Harris and Brumfield.
[4] La.R.S. 14:62.5 C was later amended by Acts 2006, No. 165, § 1 to delete "when the defendant knew or should have known that a declaration of emergency existed."
[5] Although the defense counsel did not make a second objection, and answered negatively when the trial court asked if "there was anything else," we find the first objection preserves the matter for review.