FREDERICKA HOMBERG WICKER, Judge.
|2The defendant/appellant, Michael Long (“Long”), appeals his conviction and sentence for armed robbery arguing that there was insufficient evidence to support the conviction and that the trial court *877 erred in imposing a constitutionally excessive sentence. For the reasons discussed below, we affirm the conviction and vacate the multiple-offender sentence and remand the case to the district court for resentenc-ing.
Factual and Procedural Background
Rebecca Gavin worked as a bartender at the Triangle West Bar located at 10801 Jefferson Highway in River Ridge, Louisiana during the early morning hours of October 31, 2010. After the last group of patrons left for the evening, Rebecca closed and locked the front door around 2:15 A.M. Eric Hymel, a regular | acustomer, remained in the bar with her so he could walk Rebecca to her car as he had always done.
Outside of the bar door stood Long, another regular customer, and 16-year-old Darius Patterson. Long’s face was covered with a white shirt, and Darius, who wore a black coat with a fur hood, had covered his face with a black ski mask. Long knocked on the bar’s front door. When no one answered, he uncovered his face hoping to use his relationship with Rebecca and Eric to gain entrance into the bar. When Eric heard the knock, he looked up and saw Long through the door window. Eric informed Rebecca that it was “Mike.” She then went to the door and spoke with him through the half-opened door. Long asked if he could come inside to get a beer. She complied. Rebecca did not find Long’s request strange because he had been at the bar after hours before.
As Rebecca walked to the bar to get the beer, she saw someone, later identified as Darius, enter behind Long. Rebecca did not realize a robbery was about to occur. She simply looked at Darius in the coat and ski mask and thought to herself, “it’s not that cold outside.” While Rebecca was looking at Darius, however, Long yelled “Alright, ya’ll know what’s up. Give me the money.” When she turned to face Long, he had pulled out a shotgun.
Darius, who remained masked, jumped on top of the bar, pointed a small revolver in Rebecca’s face and demanded the money from the register. Eric, who was standing at the bar with Long, asked Long why he was doing this and begged Long not to shoot him. Meanwhile, Darius obtained the money from the register and demanded that Rebecca give him the money from the poker machines as well. When Rebecca explained that she did not have access to the poker machines, Darius took her to the back to get money from the safe. Rebecca unlocked the safe and assisted Darius in retrieving the money which they stuffed into smaller bags. |4He then unzipped his coat and revealed a yellow back pack braced on the front of his chest and instructed Rebecca to put the money in there. Darius brought Rebecca back up to the front of the bar and told Long that he “got it.” As they left, Long went into a rant about how times were hard and that this was not personal, stating that he was just trying to get back at Janice.[1] As the perpetrators exited the bar, Long asked Eric for a cigarette and told them to go ahead and call the police. Rebecca then pushed the panic button. She and Eric both called 9-1-1. The en *878 tire ordeal was caught on the bar’s video surveillance cameras.
Long and Darius stole $16,728.00 during the robbery. The two fled to a nearby railroad track where they discarded the shotgun. They then went to a friend’s house, divided the proceeds, and went their separate ways.
Deputy David Chaplin, of the Jefferson Parish Sheriffs Office, arrived at the bar within three to five minutes after the 9-1-1 call had been placed. When he arrived, Dep. Chaplin performed a preliminary examination and interviewed both Rebecca and Eric. Eric gave the deputy Long’s name and address.[2] Rebecca and Eric both identified Long from a photographic lineup.
A reliable confidential informant later contacted Detective Derrick Magee of the Jefferson Parish Sheriffs Office and told him that he had information related to the armed robbery that occurred on Jefferson Highway. The informant identified the suspects as “Darius” and “Mike Long.” The detectives confirmed Darius’ identity and applied for a search warrant to search his home for proceeds from the robbery. They executed the search warrant on November 4, 2011, at 2303 Tenth |fiStreet. While there, the officers retrieved several guns, including a .22 handgun, U.S. Currency, drug paraphernalia, a black ski mask, and a black coat with a fur hood. Darius was taken to the detective’s bureau where he voluntarily signed a juvenile rights of arrestee form in the presence of his grandparents. Darius gave a taped statement about the robbery and identified Long as his co-perpetrator. He also told the officers where the two of them had discarded the shotgun, which was near a railroad track a few blocks from Wicker Neal Avenue in River Ridge. Darius accompanied the officers to the location so they could retrieve the gun.
A few days later, the detectives obtained additional information which led them to believe Long was located at 613 Wilker Neal Avenue. The police went to that address on November 6, 2010, where the homeowner gave them permission to search. The detectives did not find Long during that visit; however, when they left, the detectives were informed that Long was definitely there. They returned to 613 Wilker Neal and obtained permission to search again. This time, they found Long hiding in a closet. Det. Canas Mir-andized Long and attempted to question him. Because Long was very combative, Det. Canas ceased questioning and transported Long to jail. He visited Long a few days later at the jail and re-Miran-dized him. Long voluntarily signed the rights of arrestee form and denied any involvement in the robbery, stating that he was with his girlfriend on that night.
On November 23, 2009, the Jefferson Parish Sheriffs Office charged Long with armed robbery in violation of La. R.S. 14:64.3. He pled not guilty at arraignment. He moved to suppress Darius’ statement, the evidence of the shotgun, and the identification given by Rebecca and Eric. All motions were denied. The case proceeded to trial on August 12, 2010.
At the trial, Rebecca, who had worked at the Triangle West Bar for approximately three years, testified that she had known Long for almost two years Rand that he referred to her as “baby girl.” She testified that on the night of the robbery, Eric remained in the bar with her after closing. While the two talked, they heard some *879 thing at the door. That was when Eric told her that it was “Mike.” She then went to the door and spoke to Long whom she had not seen in a while. Long then asked if he could come inside to get a beer, and the robbery occurred. Rebecca testified that after the robbery, Long told them it was not personal and asked Eric for a cigarette. She testified that she was scared for her life.
Eric testified that he had been a customer at the bar for about five years and that he had known Long for a year and a half. He testified that on the night of the robbery, Rebecca was in the back counting the money when Long knocked on the door. He said he yelled out to Rebecca that “Mike” wanted to come in to get a beer to go. According to Eric, Rebecca told him to let Long come inside. He then opened the door, and the robbery occurred. Eric stated that after the robbery, Long told them it was not personal and asked him for a cigarette. Eric stated that he was fearful he would never see his two little girls again.
Long testified that he did not participate in the robbery of the Triangle West Bar. He said that he was with his girlfriend, Ashley, that night, but he was unable to recall her last name. He further testified that he never referred to Rebecca as “baby girl.” He denied being found in a closet on Wilker Neal, testifying that he was in the hallway when the police arrived. Long admitted knowing Darius but only because of his tattoo business.[3] He also testified about his prior convictions which included possession with intent to distribute marijuana, theft of stolen goods over $500, possession of weapon, and simple escape.
The jury found Long guilty of the charged offense. The trial judge then sentenced him to 99 years imprisonment at hard labor without the benefit of ^probation, parole, or suspension of sentence. The judge stated that he took La. C.Cr.P. art. 894.1 into consideration before imposing the sentence. Long objected to the excessiveness of the sentence, but the objection was denied. The State filed a multiple bill on August 23, 2010, alleging Long to be a third felony offender. Long pled not guilty. At the multiple-bill hearing, the State proved two predicate offenses of possession of stolen goods over $300 and distribution of marijuana. Long was then adjudicated a third felony offender. The trial judge vacated the original sentence imposed on the armed robbery conviction and resentenced him pursuant to La. R.S. 15:529.1 to 99 years imprisonment at hard labor without the benefit of probation or suspension of sentence.
Assignments of Error
Long appeals his conviction and sentencing arguing that the evidence was insufficient to support the conviction and that the trial court erred in imposing an excessive sentence.
Discussion

First Assignment of Error

In his first assignment of error, Long contends that the evidence at trial was insufficient to support the conviction for armed robbery because the State failed to prove his identity.
In reviewing the sufficiency of the evidence to support a conviction, the reviewing court must determine if the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, *880 1084. (citation omitted). The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness. Id.
IsWhen the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Harris, 07-124, p. 9 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193 (citation omitted). Positive identification by one witness is sufficient to support a conviction. Id. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
In this case, two eyewitnesses identified Long as one of the robbers of the Triangle West Bar. Rebecca testified that she had known Long for almost two years. In fact, Rebecca testified that before allowing Long to come inside, she stood in the door and talked with him because she had not seen him in a while. She further testified that the only reason she allowed Long to enter the bar was because she knew him and considered him a friend. Eric testified that he had known Long for a year and a half and that he recognized Long in the door window. After recognizing Long, he then told Rebecca that it was “Mike.”
Long argues, however, that Eric and Rebecca’s conflicting testimony regarding who opened the door cast doubt on their credibility as witnesses. Although discrepancies exist in their testimony on that issue, neither of them waivered in their testimony that Long robbed them that night. Moreover, their testimony regarding other events is consistent, i.e. Long telling them it was not personal, asking Eric for cigarettes, and telling them to call the police.
When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Bailey, 04-85, p. 4 (La. App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476. In the absence of internal contradiction or irreconcilable ^conflict with physical evidence, the testimony of one witness, if believed by the fact finder, is sufficient to convict. State v. Addison, 00-1730, p. 7 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549.
Next, Long argues that the evidence is insufficient because the video surveillance tape did not clearly identify the second perpetrator. A similar argument was presented in State v. Williams, 04-0697 (La.App. 5 Cir. 11/30/04), 889 So.2d 1135. In that case, the defendant, who had been convicted of armed robbery, challenged his conviction arguing that the evidence was insufficient to prove his identity. He argued that the bank’s security camera failed to capture a photograph of the robber. In that case, we stated, “[t]he fact that the cameras failed to capture the robber’s image does not, as defendant suggests, take away from the strength of the witnesses’ identifications.” Id. at 1140. (emphasis added). The same reasoning applies here. Two eyewitnesses, who had known Long for a reasonable length of time, identified him as one of the robbers.
Considering the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved Long’s identity beyond a reasonable doubt. It is not the function of an appellate court to assess the credibility of the witnesses or re-weigh the evidence to overturn a jury’s finding of guilt. *881 Williams, supra, at 1141. Therefore, this assignment of error is without merit.

Second Assignment of Error

In his second assignment of error, Long argues that his habitual offender sentence of 99 years imprisonment at hard labor is excessive. As discussed in the error patent section below, Mr. Long’s sentence is indeterminate. Because we are remanding the case for resentencing, we pretermit discussion of this assignment of error.
| inError Patent Discussion
The record was reviewed for errors patent in conformity with La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reveals one error that requires corrective action.
Errors concerning original sentence are rendered moot once the enhanced sentence is imposed. State v. McCloud, 04-1112, p. 9 (La.App. 5 Cir. 3/29/05), 901 So.2d 498, 505, writ denied, 05-1450 (La.1/13/06), 920 So.2d 235. In this case, Long’s original 99-year sentence was vacated, and he was re-sentenced under the multiple-bill. Thus any errors in the original sentence are moot and our review of sentencing errors are limited solely to the multiple-bill hearing.
We first note that the trial judge imposed an indeterminate sentence because he failed to impose the mandatory five-year firearm enhancement provision required by La. R.S. 14:64.3. Louisiana Revised Statute 14:64.3 provides:
[wjhen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
Although the State listed the enhancement in the multiple bill of information and the jury found Long guilty of committing armed robbery with a firearm, the trial judge did not state that he was imposing an additional period of incarceration when imposing the 99-year sentence. We therefore find the habitual offender sentence indeterminate. We vacate that sentence and remand for resentencing. State v. George, 09-886 (La.App. 5 Cir. 3/23/10), 39 So.3d 671 (citations omitted).
We also note that the commitment reflects that Long was given credit for time served but that the transcript is silent on the issue. Receiving credit for time served, however, is self-operating pursuant to La.C.Cr.P. art. 880. State v. Johnson, 05-180, pp. 10-1 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 582, writ denied, 06-1254 (La.12/15/06), 944 So.2d 1282. Therefore, corrective action is not necessary.
Finally, we note that Long was not advised of his multiple offender rights. This Court has held that the failure of the trial court to advise the defendant of his right to remain silent is harmless error when the defendant remains silent and his multiple offender status is established by competent evidence offered by the State at the hearing, rather than by the defendant’s admission. State v. Harris, 01-1380 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 389. In this case, the trial court held a multiple offender hearing at which Long’s multiple offender status was established by evidence. Further, Long did not testify at this hearing. Accordingly, the failure of the trial court to advise him of his right to remain silent is harmless error.
Conclusion
Based on the foregoing, Mr. Long’s multiple offender sentence is vacated as inde *882 terminate. The case is remanded to the trial court for resentencing. In addition, we reserve Mr. Long’s right to appeal his newly imposed sentence.

CONVICTION AFFIRMED; MULTIPLE-OFFENDER SENTENCE VACATED AS INDETERMINATE; REMANDED TO THE DISTRICT COURT.

. Prior to October 31, 2010, the bar owner, Ms. Janice Stipelcovich, told Long that he was no longer welcomed at the bar. She first told him on August 2, 2010, and then again on October 29, 2010 — which was the last time she saw him. Janice suspected that Long was selling drugs from her bar and did not want him to come back there. Rebecca, who had been off work for awhile with her ill child, was unaware that Long was not welcomed there.

. Dep. Chaplin helped serve a search warrant between 10:30 P.M. and 11:00 P.M. on October 31, 2010, at 10950 Jefferson Highway Apartment U2 but was informed that Long no longer lived there. No proceeds of the robbery were found at that address.

. Long was a self-employed tattoo artist.