# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-657

**STATE OF LOUISIANA**

**VERSUS**

**REUBEN S. WILLIAMSON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2021-158
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

**CONVICTION OF ARMED ROBBERY VACATED;**
**CONVICTION OF SIMPLE ROBBERY ENTERED;**
**SENTENCES VACATED;**
**AND REMANDED WITH INSTRUCTIONS.**

Sherry Watters
Louisiana Appellate Project
P. O. Box 58769
New Orleans, LA 70158-8769
(504) 723-0284
COUNSEL FOR DEFENDANT/APPELLANT:
    Reuben S. Williamson

James R. Lestage
District Attorney, 36th Judicial District/Beauregard Parish
Richard A. Morton
Adam M. Bone
Assistant District Attorneys, 36th Judicial District/Beauregard Parish
124 South Stewart Street
DeRidder, LA 70634
(337) 463-5578
COUNSEL FOR PLAINTIFF/APPELLEE:
    State of Louisiana

**SAVOIE, Judge.**

On January 28, 2021, Defendant Reuben Williamson ("Defendant") illegally entered the home of Ms. Sarah Lewis ("Ms. Lewis") while pretending to be a law enforcement officer conducting a criminal investigation. Defendant ultimately took Ms. Lewis's purse and cash and searched the rest of Ms. Lewis's home while Ms. Lewis remained in her bedroom. After Defendant's departure, Ms. Lewis and her children discovered that five firearms were missing from Ms. Lewis's gun cabinet in the spare bedroom.

As a result, Defendant was charged in April of 2021 with one count of aggravated burglary, in violation of La.R.S. 14:60; one count of unauthorized entry of an inhabited dwelling, in violation of La.R.S. 14:62.3; five counts of theft of a firearm, in violation of La.R.S. 14:67.15; one count of possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1; one count of armed robbery, in violation of La.R.S. 14:64; and one count of false personation of a peace officer, in violation of La.R.S. 14:112.1.

Defendant proceeded to trial on February 22, 2022. On February 24, 2022, a unanimous jury found Defendant guilty as charged on all ten counts. Defendant filed a Motion for a New Trial on March 15, 2022, contending that "the prosecution failed to prove beyond a reasonable doubt that the defendant committed the crime of Armed Robbery." On March 25, 2022, the State filed a habitual offender bill of information. On April 4, 2022, the trial court heard and denied Defendant's Motion for a New Trial and accepted Defendant's denial of the allegations of the habitual offender bill.

On April 25, 2022, the trial court found Defendant to be a fourth or subsequent felony offender for counts one through seven, nine, and ten, and it sentenced Defendant on April 28, 2022, as follows with respect to each count:

1. Aggravated burglary as a habitual offender – seventy-five years at hard labor without benefit of probation, parole, or suspension of sentence;

2. Unauthorized entry as a habitual offender – twenty years at hard labor without benefit of probation or suspension of sentence;

3. Theft of a firearm as a habitual offender – twenty years at hard labor without benefit of probation, parole, or suspension of sentence;

4. Theft of a firearm as a habitual offender – twenty years at hard labor without benefit of probation, parole, or suspension of sentence;

5. Theft of a firearm as a habitual offender – twenty years at hard labor without benefit of probation, parole, or suspension of sentence;

6. Theft of a firearm as a habitual offender – twenty years at hard labor without benefit of probation, parole, or suspension of sentence;

7. Theft of a firearm as a habitual offender – twenty years at hard labor without benefit of probation, parole, or suspension of sentence;

8. Possession of a firearm by a convicted felon – twenty years at hard labor without benefit of probation, parole, or suspension of sentence;

9. Armed robbery as a habitual offender – ninety-nine years at hard labor without benefit of probation, parole, or suspension of sentence;

10. False personation of a police officer as a habitual offender – twenty years at hard labor without benefit of probation or suspension of sentence.

All sentences were ordered to be served concurrently.

Defense counsel objected to the sentences as excessive, and the trial court allowed him to raise an oral motion to reconsider the sentences. Defense counsel argued that the trial court's determination that terrorism was an aggravating factor due to Ms. Lewis feeling terror was inappropriate and not what the legislature

intended when it wrote La.Code Crim.P. art. 894.1(B)(17). Defendant also argued that his sentences were disproportionate to his crimes, contending he is "not the worst of the worst."

The trial court denied the motion to reconsider sentences. It specifically indicated that it did not apply an aggravating factor of terrorism, but rather simply noted that Ms. Lewis was terrorized by Defendant's actions. Additionally, the trial court dismissed Defendant's disproportionality argument based upon Defendant's numerous arrests and convictions during the twenty-seven years after he became a legal adult.

On June 6, 2022, the trial court heard a State-filed motion to reconsider sentence wherein the State sought an order of restitution for damages suffered by Ms. Lewis—namely, property damage and the value of the guns that were stolen but never recovered. The trial court found Defendant responsible for $3,252.00 in damages but ordered that $1,594.00 recovered from Defendant at the time of his arrest be given to Ms. Lewis as partial payment. It then rendered a restitution order against Defendant for the remaining amount of $1,658.00.

Defendant now appeals his convictions and sentences, assigning the following assignments of error: (1) the State failed to sufficiently prove Defendant was guilty of armed robbery, aggravated burglary, and/or possession of a firearm by a convicted felon; (2) Defendant's conviction for aggravated burglary as well as the underlying felonies violated the constitutional prohibition against double jeopardy; and (3) the district court imposed excessive sentences in refusing to deviate below the mandatory sentence on most of the convictions, and the seventy-five year sentence for aggravated burglary impermissibly exceeds statutory authority.

3

# FACTS

Ms. Lewis's son, Kenneth Lewis ("Mr. Lewis"), testified that Ms. Lewis called him around 3:45 a.m. on January 28, 2021, and told him that she had been robbed. According to Mr. Lewis, his mother said "she was made to sit on the bed and he took her purse, her money and her guns, laptop and her iPad. And immediately she said he said that he was going to kill her if she called the police."

Mr. Lewis described his mother's gun cabinet as a wooden upright cabinet with glass paneled doors that could hold roughly six guns. He noted the door frame and glass had been broken even though the key to the lock was on top of the cabinet. He testified that prior to January 28, 2021, the cabinet contained "a 22 automatic, there was a 22 single shot, a 410 pump, a 12-gauge single shotgun and a 12-gauge pump shotgun."

The State's second witness, Mrs. Chaery Lewis Townsley ("Mrs. Townsley"), is Ms. Lewis's daughter. According to Mrs. Townsley, her mother told her that Defendant had threatened to rape and kill her if she called the police or left the bed in her bedroom where he had told her to stay. She noted that it was clear the spare bedroom had been ransacked and there was glass in the utility room where Defendant had broken into the home. She also noted that the glass had been broken in the gun cabinet. Mrs. Townsley testified that although her mother told her Defendant took the guns from the gun cabinet, her mother never said that she saw Defendant with a gun.

The State then called Ms. Lewis, the victim in this matter. Ms. Lewis testified that on January 28, 2021, she heard a loud noise around 2:30 a.m. that she thought was a large branch hitting her roof. She explained that she was asleep in her bed at that point, and that she was subsequently woken up with a flashlight

being pointed into her face. According to Ms. Lewis, she asked the man who he was and why he was in her house while he was standing in the doorway. She testified that he told her he was with the Sheriff's Office looking for an escapee. Ms. Lewis stated that the man told her someone had broken into her house through both doors, and that he showed her that the door in the utility room was wide open. Ms. Lewis testified "[h]e was very nice right at first. You wouldn't have thought he wasn't with the Police Department." She testified he showed her that the exterior door in the family room was also wide open. Ms. Lewis explained that after the man declined her offer of refreshments, it dawned on her that law enforcement would not be looking for an escapee without any kind of weapon.

Ms. Lewis testified that she went to her bedside telephone to call the Sherriff's Office to confirm that the man in her house was with them, but the man snatched the phone out of her hand, began using profane language, and told her she had to sit on the bed and not move. She testified that he told her if she got off the bed "he would rape or kill" her. According to Ms. Lewis, the man returned to the doorway of her room multiple times while he was ransacking the house, and he threatened to kill her if she moved. Ms. Lewis testified that the man took her wallet, which had been on her bed with her, as well as her purse that was in the spare bedroom, after she told him where it was. She stated she was afraid of the man because he was very angry, and she did not want to antagonize him. Ms. Lewis also testified that she told the man where her large water jug full of change was located, and he immediately took it from under her bedroom dressing table.

Ms. Lewis testified that when the man left, she was missing five long guns, her iPad, her large jug full of coins, six dollars in cash, her purse, and her wallet.

5

She noted that she pleaded with the man not to take her wallet because all of her medical cards were in it.

Although Ms. Lewis testified that she did not see the man take the guns out of her gun cabinet, she noted they were locked in the gun cabinet prior to January 28, 2021, and that her common sense told her he had taken them along with her iPad and other items. Ms. Lewis testified that the gun cabinet in the spare bedroom had been there almost as long as she had lived in the home and that she had lived in the home since the early 1960s. She testified that there was a 410, a single shot 22, and a semi-automatic 22 rifle that belonged to her, as well as a "big shotgun" that belonged to her husband's family, and another that belonged to her husband, and that the guns were in the cabinet prior to January 28, 2021.

Ms. Lewis testified that she guessed the incident took around forty-five minutes and that before he left, the man threatened to "come back and rape and kill" her if she called the Sheriff's Department; therefore, she called her son. She also explained that she found the man's phone at the end of her bed and tried using chairs to prevent the man from returning because she knew the locks were broken.

Ms. Lewis recounted that the man returned for his phone, and claimed that he was even angrier than before, cursed at her, and that he nearly hit her with the door after breaking the glass to get inside. She testified that the man had cut the phone line on her kitchen phone, and she noted that the headsets for both phones were gone when the man left.

Ms. Lewis described the man as Caucasian and wearing a grey hooded sweatshirt and baggy jeans, gloves, and short-trimmed black facial hair on the day of the incident. Based upon Defendant's voice and height, Ms. Lewis positively

identified Defendant during trial as the man who was in her house in the early morning hours of January 28, 2021.

On cross-examination, Ms. Lewis confirmed that she never actually saw Defendant holding a gun and that Defendant did not threaten her with a gun; however, she stated that she knew there were five guns in her spare bedroom before he broke in and all of the guns were gone when he left. She re-affirmed that the only items she saw him take from her room were her jug of coins and her wallet. She also stated that she believed Defendant's threats that he would kill her.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we conclude that the sentences should be vacated as indeterminate and that the case should be remanded for resentencing.

The sentences imposed are indeterminate because the trial court ordered the payment of restitution "to the victim in this matter" without specifying to what count or counts the restitution order applied. When the trial court ordered Defendant to pay restitution, it stated:

> All right. Well, the Court will find that based upon the itemization of actual damages there is a specific loss to the victim in this matter in the amount of $3,252.00 and I'll order restitution to the victim in this matter in that same amount.

Counts one, two, nine, and ten in the bill of information name the same victim, while the remaining counts do not name a victim. Thus, it is not possible to discern a specific count to which the trial court intended the restitution order to apply.

In *State v. Pope*, 19-670, (La.App. 3 Cir. 6/10/20), 299 So.3d 161, *writ denied*, 20-852 (La. 10/6/20), 302 So.3d 532, this court found the trial court imposed indeterminate sentences when it failed to specify on which count or counts it imposed several terms of the sentence, including restitution. *See also State v. Duhon*, 20-513 (La.App. 3 Cir. 5/26/21), 322 So.3d 326, where this court found the defendant's sentences were indeterminate because the trial judge failed to state on which count or counts restitution was imposed.

We further note that in *State v. Brown*, 19-771 (La. 10/14/20), 302 So.3d 1109, the supreme court announced a new rule concerning indeterminate sentences. The indeterminate sentence in *Brown* involved the trial court's failure to specify whether the concurrent, sixty-year terms of imprisonment for three counts of armed robbery with a firearm included the mandatory five-year sentence enhancement required by La.R.S. 14:64.3(A). The court of appeal vacated the sentences and remanded for resentencing; however, the supreme court found error by the court of appeal and stated the following regarding the purpose of La.Code Crim.P. art. 879's requirement that determinate sentences be imposed:

> The court of appeal erred in finding the sentences were indeterminate as an error patent. The 1926 indeterminate sentence law provided that, except as to certain enumerated offenses, the sentence imposed should include both a minimum and maximum term. *See* 2916 La. Acts 222. Under this law, after serving the minimum term of his sentence a prisoner was eligible for parole. To remedy confusion over the correct interpretation and application of this law, Article 529 of the Code of Criminal Procedure was amended in 1942 to require determinate sentences of fixed terms of imprisonment. *See* 1942 La. Acts 46.
>
> At present, La.C.Cr.P. art. 879 continues to require that a term of imprisonment be a fixed number of years by providing that "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." This article is routinely misapplied by the intermediate appellate courts to find determinate, fixed term sentences to be indeterminate when a

district court has not specified that five years of a fixed sentence result from the firearms enhancement provision of La.R.S. 14:64.3(A). The intermediate appellate courts vacate such sentences in errors patent review. *See, e.g., State v. Billingsley*, 11-1425 (La. App. 3 Cir. 3/14/12, 86 So.3d 872; *State v. Long*, 11-0313 (La. App. 5 Cir. 12/13/11), 81 So.3d 875; *State v. Adams*, 10-1140 (La. App. 4 Cir. 6/1/11), 68 So.3d 1165; *State v. Weaver*, 38,322 (La. App. 2 Cir. 5/12/04), 873 So.2d 909.

As a rule of thumb, however, if it is possible to calculate a parole eligibility or full-term release date, then the sentence is not indeterminate. While it is possible that defendant's sentences did not include the firearms enhancement and were therefore *illegally lenient*, they were not *indeterminate*. Furthermore, the State did not complain on appeal that the sentences were illegally lenient. Therefore, the court of appeal erred in finding as an error patent that they were indeterminate and in vacating them, absent any complaint by the State that the district court failed to apply the mandatory firearms enhancement.

*Id.* at 1110 (alteration in original)(emphasis in original).

*Brown*, however, does not address the problems that may arise in the present case if the sentences were allowed to remain as they were imposed. For instance, the trial court's failure to specify on which count or counts restitution is imposed could be problematic in the event one of the counts is vacated. Depending on which count is vacated, it may be unclear as to whether the restitution order is vacated as well. Additionally, in *Duhon*, 322 So.3d 326, this court found the sentences were indeterminate despite counsel's argument that the trial court's intent could be discerned from the record.

As this court did in *Pope* and *Duhon*, we hereby vacate the sentences imposed, remand for the imposition of determinate sentences, and specifically instruct the trial court to specify on which count or counts the restitution order applies.

9

**ASSIGNMENT OF ERROR NO. 1:**

In his first assignment of error, Defendant contends that the evidence presented at trial was insufficient to support his convictions for armed robbery, aggravated burglary, and possession of a firearm by a convicted felon. Defendant argues that because Ms. Lewis testified she never saw Defendant with a weapon, the State failed to prove he was armed as required to prove armed robbery and aggravated burglary and also failed to prove he possessed a firearm as required to prove possession of a firearm by a convicted felon.

The analysis for insufficient-evidence claims is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Regarding a conviction for armed robbery, this court has previously set forth the elements of said offense:

> To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; *State v. Jeselink,* 35,189[, pp. 7-8] (La.App.2d Cir. [10/31/01]), 799 So.2d 684[, 690].

10

*State v. McGinnis*, 07-1419, p. 11 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, 890 (quoting *State v. Ellis*, 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, *writ denied,* 07-2190 (La. 4/4/08), 978 So.2d 325).

Defendant contends the State also failed to prove anything was taken from Ms. Lewis's "person or immediate control." However, we find no merit to this contention. Ms. Lewis testified that Defendant stole her wallet that was on the bed next to her, and that she begged him not to take the wallet because it contained her identification and medical cards. Viewing the evidence in the light most favorable to the prosecution, the State clearly proved something of value was taken from Ms. Lewis's "immediate control."

Defendant also contests the State's evidence regarding the final element for armed robbery, namely that he was armed with a dangerous weapon at the time of the taking. Even though Defendant was clearly in possession of firearms at some point during the incident, given that he conceded at trial to thefts of firearms, Defendant argues that he was not "armed" during the robbery, and that his actions, at most, constituted simple robbery, which is a lesser included offense.

We agree with Defendant's argument that the State failed to prove that he took anything from Ms. Lewis or in her immediate control "while armed with a dangerous weapon." Although it is clear Defendant was in possession of multiple firearms at some point during the incident, La.R.S. 14:64 requires a defendant to be armed with a dangerous weapon at the time of the taking at issue. Ms. Lewis testified she never saw Defendant with a gun. In addition, although she testified that she believed Defendant's threats that he would rape or kill her, there is no

11

indication he ever threatened to shoot her or otherwise use a dangerous weapon in carrying out those threats.

Given the State's failure to prove that Defendant used or threatened the use of a weapon during the incident, Defendant's conviction for armed robbery is not supported by sufficient evidence and must be vacated.

We next consider whether the State presented evidence sufficient to support a responsive verdict. Under La.Code Crim.P. art. 814(A)(29), the lesser included offenses for armed robbery are attempted armed robbery, first degree robbery, attempted first degree robbery, simple robbery, and attempted simple robbery.

A conviction for first degree robbery or attempted first degree robbery under La.R.S. 14:64.1(A) would require the offender to lead "the victim to reasonably believe he is armed with a dangerous weapon." As previously stated, there is no evidence Defendant threatened Ms. Lewis with a dangerous weapon or claimed to be armed with a dangerous weapon, and Ms. Lewis did not testify that she believed Defendant to be armed with a dangerous weapon. Accordingly, the State's evidence was insufficient to support a conviction for either first degree robbery or attempted first degree robbery.

Simple robbery is relevantly defined as "[t]he taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." La.R.S. 14:65(A)(1). The only difference between armed robbery and simple robbery is whether the offender is armed during the taking. Given the discussion above, the State's evidence was sufficient to justify a conviction for simple robbery. Accordingly, Defendant's conviction for armed robbery is hereby

12

vacated, a conviction for simple robbery is entered, and the case is remanded for Defendant to be sentenced in accordance therewith.

Defendant also contends his conviction for aggravated burglary is based upon insufficient evidence. According to La.R.S. 14:60:

> A. Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, under any of the following circumstances:
>
> (1) If the offender is armed with a dangerous weapon.
>
> (2) If, after entering, the offender arms himself with a dangerous weapon.
>
> (3) If the offender commits a battery upon any person while in such place, or in entering or leaving such place.

Defendant argues that because Ms. Lewis never saw him with a gun, the State failed to prove any of the aggravating conditions. However, at trial, Defendant conceded his guilt regarding the thefts of five firearms, which logically indicates that, at some point after entering Ms. Lewis's home, he took possession of the five firearms during the incident.

This case is similar to *State v. Lazaro*, 12-134 (La.App. 3 Cir. 11/7/12), 125 So.3d 1134, where the defendant argued that carrying a handgun in his backpack after his theft of the handgun gun from a residence did not constitute arming himself under the aggravated burglary statute. This court disagreed and stated:

> As relevant to the facts of this case, La.R.S. 14:60(2) requires that "[a]fter entering [the accused] arms himself with a dangerous weapon." The defendant contends that there is no evidence that he had already stolen a handgun while Mr. Wade was present in the house. However, as previously discussed, Mr. Wade's presence in the house was not necessary for the completion of the crime. The defendant simply had to arm himself with a dangerous weapon at some point after entering in order to meet the requirements of La.R.S. 14:60(2). There is sufficient evidence in the record to support a conclusion that the defendant did so. Mr. Wade testified that all three of his handguns

13

were missing, including two revolvers and a semi-automatic. In his statement, the defendant admitted taking a handgun and placing into a backpack. Further, Detective Fontenot testified that he recovered two backpacks from the road which contained, among other items, a semi-automatic pistol and a revolver.

Additionally, the defendant argues that he did not "arm himself until the stolen gun was removed from the backpack." However, we find no merit in this contention. The defendant admitted that he stole at least one handgun while inside the Wades' residence and placed it into a backpack, where it was readily available.

*Id.* 125 So.3d at 1138 (alterations in original).

Similarly, in the instant case, Defendant's admitted theft of the firearms is sufficient evidence under the circumstances, when viewed in the light most favorable to the prosecution, to support Defendant's conviction for aggravated burglary. Therefore, this conviction is affirmed.

Finally, Defendant contends the State failed to prove that he ever possessed a firearm, which is a necessary element of his conviction for possession of a firearm by a convicted felon. Defendant acknowledges that the State proved the other elements of the offense but contends that, because Ms. Lewis did not see Defendant with the guns and the State failed to recover them, the State failed to prove he possessed the weapons.

We find no merit to this argument. Defendant conceded that he was guilty of the thefts of the firearms. There is no evidence of anyone, other than Defendant, being in Ms. Lewis's home to have been able to physically remove the guns from the gun cabinet. It is impossible for Defendant to have stolen five long guns, while acting alone, without possessing them at least enough to move them. Accordingly, the State's evidence was sufficient to support Defendant's conviction for possession of a firearm by a convicted felon.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, Defendant argues that his right against double jeopardy was violated when he was convicted of aggravated burglary, as well as armed robbery, five counts of theft of a firearm, and possession of a firearm by a convicted felon.

The right against double jeopardy, which is guaranteed by both the federal and state constitutions, is set forth in La.Code Crim.P. art. 591:

> No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.

Although Louisiana courts once evaluated double jeopardy claims under a "same evidence" standard, the supreme court did away with that test in *State v. Frank*, 16-1160 (La. 10/18/17), 234 So.3d 27. In *Frank*, the supreme court held that in evaluating double jeopardy issues, Louisiana courts are to use the following test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932).

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres v. United States*, 220 U. S. 338, 342, 31 S. Ct. 421, 55 L. Ed. 489, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey v. Commonwealth*, 108 Mass. 433: 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'

*Id*. 284 U.S. at 304.

Defendant's conviction of aggravated burglary, as well as the conviction of simple robbery that we are hereby entering in this case, are not the same offenses,

or otherwise violate double jeopardy considerations. By statutory definition, aggravated battery requires an unauthorized entry of an inhabited dwelling or any structure, water craft or movable where a person is present, an intention to commit a felony or theft, and the existence of at least one enumerated aggravated factors including the defendant be armed, or arming himself with a dangerous weapon after entering. *See* La.R.S. 14:60. Simple robbery, on the other hand, requires "[t]he taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." La.R.S. 14:65(A)(1). Thus, each crime, by definition, requires proof that the other does not.

Similarly, there are elements necessary for a conviction of aggravated burglary that are not required for a conviction of theft of a firearm, and vice versa. Again, an aggravated burglary requires an unauthorized entry with an intent to commit a felony or theft, as well as an aggravating factor. However, aggravated burglary, unlike theft of a firearm under La.R.S. 14:67.15, does not require evidence that the defendant actually took, or misappropriated, a firearm from another person, or evidence that the defendant intended to permanently deprive another of the firearm. In addition, theft of a firearm under La.R.S 14:67.15, unlike aggravated burglary under La.R.S. 14:60, does not require evidence of an unauthorized entry, or an aggravating factor. The two crimes in question are not the same offenses according to their statutory definitions, and Defendant's convictions of both aggravated burglary and theft of a firearm in this matter do not violate double jeopardy considerations.

16

Further, Defendant's convictions of possession of a firearm by a convicted felon under La.R.S. 14:95.1, together with his convictions of aggravated burglary and/or thefts of firearms do not violate double jeopardy.

> To convict a person of being a felon in possession of a firearm under La.R.S. 14:95.1, the State must prove beyond a reasonable doubt (1) that Defendant has been convicted of a felony enumerated in this statute; (2) that subsequent to that conviction, Defendant possessed a firearm; (3) that a period of less than ten years has elapsed since Defendant's completion of his sentence, parole, or probation for the prior conviction; and (4) that Defendant had the general intent to commit the offense.

*State v. Bryant*, 21-240, p. 12 (La.App. 3 Cir. 12/22/21), 333 So.3d 495, 502.

Unlike possession of firearm by a convicted felon under La.R.S. 14:95.1, neither aggravated burglary, nor theft of a firearm, require proof that a defendant has a prior conviction of a felony. Further, aggravated burglary requires an unauthorized entry, an intent to commit a felony or theft, and an aggravating factor, whereas possession of a firearm by a convicted felon does not. In addition, unlike the crime of possession of a firearm by a convicted felon, the crime of theft of a firearm requires a misappropriation of a firearm from another with an intent to permanently deprive the other of the firearm.

Defendant's convictions of aggravated burglary, simple robbery, thefts of a firearm, and possession of a firearm by a convicted felon, do not violate double jeopardy considerations, and, therefore, we find no merit to Defendant's second assignment of error.

## ASSIGNMENT OF ERROR NO. 3:

In his third and final assignment of error, Defendant contends his sentences are excessive. However, in light of our decision above to vacate Defendant's

17

sentences because they are impermissibly indeterminate, Defendant's third assignment of error is rendered moot.

## **DECREE**

Defendant's conviction of armed robbery is hereby vacated, and a conviction of simple robbery is entered. Defendant's remaining convictions are affirmed. In addition, Defendant's sentences are hereby vacated, and the case is remanded with instructions to the trial court to sentence Defendant in accordance with the simple robbery conviction entered herein, and to impose determinate sentences that specify to which count or counts the restitution order applies.

**CONVICTION OF ARMED ROBBERY VACATED; CONVICTION OF SIMPLE ROBBERY ENTERED; SENTENCES VACATED; AND REMANDED WITH INSTRUCTIONS.**